MARIAN McDONALD v. CITY OF ST. PAUL.[1]

January 23, 1901.

Nos. 12,406—(207).

**Personal Injury.**

    The plaintiff was thrown down and injured by a wire stretched along the boulevard at a street corner, and this is an action to recover damages for her injuries. *Held:*

[1] Reported in 84 N. W. 1022.

**Use of Street.**

1. The primary purpose of a public street is to accommodate public travel, but whenever any portion of a street not devoted to business purposes can be set apart for park or boulevard purposes without any substantial impairment of such primary purpose, the city may set such portion apart for a boulevard.

**Use of Boulevard.**

2. When a city has rightly set apart and improved a part of a street for a boulevard, it is not bound to use due care to keep such part free from all obvious obstructions which are necessarily incident to its use as a boulevard, although they may endanger the safety of travelers thereon.

**Obstruction at Corners.**

3. But a city has no right to maintain, or permit others to do so, on its boulevards, and especially on those at the street corners, anything in the nature of a dangerous pitfall, or trap, or snare, or like obstruction, whereby the traveler may be injured.

**Negligence a Question of Fact.**

4. The question of the negligence of the defendant in this case and of the plaintiff was rightly submitted as one of fact to the jury.

Action in the district court for Ramsey county to recover $5,000 damages for personal injuries. The case was tried before Otis, J., and jury, which rendered a verdict in favor of plaintiff. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*J. E. Markham* and *F. W. Root*, for appellant.

A city has the absolute right to determine what part of a street shall be devoted to team travel, what part to sidewalks, and what part to boulevards, grass plots, trees, and other suitable uses; and the plan adopted for such work is beyond judicial review, unless some distinct legal duty has been imposed and violated. Dougherty v. Trustees, 159 N. Y. 154; English v. City, 170 Ill. 131; McArthur v. City, 58 Mich. 357. Municipal corporations are not liable for obstructions in portions of the street or highway not part of the traveled path and not so connected with it that they will affect the security or convenience of those using the, traveled path. A city is not liable for injury to a person, caused by his falling over an obstruction permitted by the city to be upon

the grass plot or boulevard between the sidewalk and the traveled way, when the sidewalk is open, safe, and sufficient, and there is no excuse for his leaving the sidewalk, other than his own convenience. It is not claimed that the wire was dangerous to any one in the day time, but that it was made so at this time by reason of the darkness; this, notwithstanding that it is settled that a city is not bound to light any portion of its streets. McHugh v. City of St. Paul, 67 Minn. 441. The wire was not put there maliciously, for the purpose of injuring any one. It was there to serve a useful purpose in supporting the tree. While it was an obstruction, it was a lawful obstruction, because it was where the city had a legal right to have it. Aston v. City, 134 Mass. 507; Moran v. Inhabitants, 162 Mass. 196; Lowe v. Inhabitants, 136 Mass. 24; City v. Gregson, 31 Kan. 99; Smith v. Inhabitants, 7 Cush. 498; City v. Taylor, 62 Oh. St. 11; Wheeler v. Town, 30 Wis. 392; Morgan v. City, 57 Me. 375; Smith v. Inhabitants, 7 Cush. 498; Kellogg v. Inhabitants, 4 Gray, 65; Rhyner v. City, 97 Wis. 523; Philbrick v. Inhabitants, 63 Me. 477; Leslie v. City, 62 Me. 468; Macomber v. City, 100 Mass. 255; Keyes v. Village, 50 Mich. 439; Fitzgerald v. City, 51 Wis. 81; Fitzgerald v. City, 64 Wis. 203; Cartright v. Town, 58 Wis. 370; Rice v. Town, 19 Vt. 470; Bacon v. City, 3 Cush. 174, 176; City of Hannibal v. Campbell, 30 C. C. A. 63; Dubois v. City, 102 N. Y. 219; Oliver v. City, 13 Colo. App. 345; Dougherty v. Trustees, 159 N. Y. 154; Lindholm v. City of St. Paul, 19 Minn. 204 (245); Treise v. City of St. Paul, 36 Minn. 526.

From the foregoing authorities we must conclude: That defendant was not required to keep Marshall avenue safe for travel throughout its entire width. It performed its whole duty when it prepared and maintained a good and sufficient roadway for teams, and ample and safe sidewalks and crosswalks for persons on foot. The sidewalk was designated, and obviously intended, for travel by pedestrians, and was without obstructions. The wire, although within the limits of the street as platted, was not in any traveled part of the street, nor so connected with it as to affect the safety or convenience of any one using either the roadway or sidewalk. In voluntarily departing from the sidewalk,

and adopting the boulevard, plaintiff became a trespasser upon the rights, both of the city and the adjoining property owner. Ryan v. Preston, 32 Misc. (N. Y.) 92. There is nothing to warrant a finding that defendant was negligent. On the other hand, it is plain that plaintiff, in knowingly and purposely departing from the sidewalk and way provided by the city for pedestrians, assumed the risk of what might happen to her.

*Daniel W. Doty* and *Thomas J. Wheeler*, for respondent.

Defendant cites a large number of cases which involved injuries received by persons traveling in vehicles or on foot on highways chiefly in the country and in villages which had been reclaimed from their natural state and wrought for travel less than their full width, which portion, eight feet wide and upwards, is variously denominated in the books as "the traveled track," "the traveled way," and "the traveled path." The following cases cited by defendant are all of this class: Moran v. Inhabitants, 162 Mass. 196; Lowe v. Inhabitants, 136 Mass. 24; Smith v. Inhabitants, 7 Cush. 498; Wheeler v. Town, 30 Wis. 392; Keyes v. Village, 50 Mich. 439; Cartright v. Town, 58 Wis. 370; Rice v. Town, 19 Vt. 470; Brown v. Mayor, 57 Mo. 156. Such decisions on obstructions or dangerous places outside the "traveled track," have no application to a city street like Marshall avenue, where the full one hundred feet in width had been reclaimed from a state of nature and reduced to a perfect condition for pedestrians. So far as vehicles are concerned the "traveled way" on Marshall avenue is fifty-two feet wide, but as to pedestrians, the "traveled way" is one hundred feet wide. Nearly all the remaining authorities cited by defendant are cases involving injuries received by vehicles or their occupants from collision with some object outside the carriage way. The following are all of that class: Dougherty v. Trustees, 159 N. Y. 154; McArthur v. City, 58 Mich. 357; City v. Gregson, 31 Kan. 99; Macomber v. City, 100 Mass. 255. The negligence of the city and the contributory negligence of plaintiff were proper questions for the jury.

A pedestrian has a right to walk in the carriage way and in the boulevard and to cross both either in the center of the block or at a corner, and on the prepared crossings or not, as may suit

his pleasure, convenience, or necessity, and in so doing he does not become a trespasser. When pedestrians do depart from the walks specially prepared for their use, they are required to exercise due care and prudence to avoid certain obstacles that may reasonably be expected to present themselves on the carriage way and boulevard. It follows from the last two propositions that, while the city is not bound to keep the boulevard free from all obstructions, as in the case of sidewalks, it has no right to maintain or permit others to maintain therein, and especially at a corner of a street, anything in the nature of a dangerous pitfall, a trap, or a snare from which a traveler might receive serious injury, and especially any obstruction unlikely to be perceived by a pedestrian in the exercise of a reasonable degree of prudence and caution. Whether or not this wire was such a dangerous construction for which the city was liable is a question for the jury. Raymond v. City, 6 Cush. 524; Brusso v. City, 90 N. Y. 679; City v. Mizee, 48 Kan. 435; Woodman v. Metropolitan, 149 Mass. 335, 339; Gerald v. City, 108 Mass. 580; Simons v. Gaynor, 89 Ind. 165; Nichols v. City of Minneapolis, 33 Minn. 430; Cleveland v. City of St. Paul, 18 Minn. 255 (279); Furnell v. City of St. Paul, 20 Minn. 101 (117).

In considering the authorities the difference should be noted between the rights of pedestrians and those of team travelers. While a teamster may not drive upon the sidewalk, a pedestrian may walk in the center of the street. This distinction will explain some of the apparently contradictory cases. The difference between a city street and the village or county road should also be noted. While the city is bound to keep the entire width of the street in repair, some of the cases hold that a village or town is obliged to keep in repair only the traveled portion of a highway. This distinction is well pointed out in the cases cited by appellant. Wheeler v. Town, supra; Bacon v. City, 3 Cush. 174, 176; Cartright v. Town, supra; Rice v. Town, supra. Plaintiff might also recover in this case on the theory of the negligence of the city in allowing a dangerous structure to exist so near the traveled path, even if it were not actually in the street. The city is liable for an injury caused by obstructions so close to or connect-

ed with the highway as to endanger, travel. Lowe v. Inhabitants, supra; Wheeler v. Town, supra; Fairgrieve v. City, 39 Mo. App. 31; Foxworthy v. City, 31 Neb. 825.

START, C. J.

The plaintiff, on the evening of December 2, 1899, while attempting to cross the street diagonally at the southwest corner of Marshall and Dewey avenues in the city of St. Paul, was thrown to the ground by a wire stretched along the boulevard at the street corner, whereby she was injured. She brought this action to recover damages for personal injuries so sustained on the ground that the city was negligent in permitting the wire to be in the street. Verdict for the plaintiff for $250. The defendant moved for judgment in its favor notwithstanding the verdict, which was denied, and it appealed from the judgment entered upon the verdict.

The undisputed facts in this case, briefly stated, are these: Marshall avenue runs east and west, and is one hundred feet wide, and is crossed at right angles by Dewey avenue, sixty-six feet wide. The central fifty-two feet of Marshall avenue are graded and prepared for a roadway. Through the center of this roadway two street-car tracks are maintained and used for passenger traffic. On either side of this roadway are boulevards eighteen feet wide, and outside them are plank sidewalks six feet wide. On the dividing lines between the roadway and the boulevards are stone curbs. The boulevards are graded on a level with the sidewalks and the top of the curb. Grass and shade trees are growing on the boulevards. On Dewey avenue the boulevards are eleven feet wide. There is a walk across Marshall avenue on the west line of Dewey avenue, and the sidewalk on the south side of Marshall west of Dewey continues across the boulevard and into the roadway of Dewey avenue. At the intersection of Marshall and Dewey, and between the crosswalks and the curb, at the southwest corner, is an oblong portion of boulevard eleven by eighteen feet.

On November 18—two weeks before the accident—the owner of the adjoining property set out a tree near the center of the oblong tract. To support the tree, a small wire was wound

around the tree about four or four and one-half feet from the ground, and fastened, one end thereof, to a stake driven into the ground at a point twenty-two inches north of the crosswalk leading to Dewey avenue, and three feet and two inches inside the curb, and the other end thereof to a stake driven into the ground at a point about seven feet three inches north from the tree, and about five feet and five inches from the crosswalk leading across Marshall avenue. The tops of the stakes were driven nearly level with the surface of the ground. The stakes and wire could readily be seen by daylight, but not at night.

The plaintiff, on the evening in question, and after dark, was walking rapidly (as she was afraid she would miss a car) on the sidewalk on the south side of Marshall avenue for the purpose of taking the car which was to stop on the east side of Dewey avenue. When she reached the corner, she attempted to "cut across"—that is, to cross diagonally—the oblong portion of the boulevard we have described, and in so doing she was caught by the wire, and thrown down and injured. While she could not see the wire, she observed the tree, and the surface of the ground, which appeared to be free from obstructions. The evidence as to the locus in quo indicates that pedestrians who were in a hurry, and knowing nothing about the wire, would be quite apt to "cut across the corner." The side and crosswalks were in a condition of safety, and the plaintiff would not have been injured if she had kept thereon. The place of the accident was in the residence district of the city, but it was about five miles from the center of the city, and was somewhat sparsely populated. A mounted policeman, however, patrolled the district for twenty-two hours each day, passing the corner in question frequently. It was his duty to report to his chief any defects in the streets or sidewalks discovered by him.

The defendant requested the trial court to direct a verdict in its favor on the ground that, as a matter of law, upon the undisputed evidence, the defendant was not guilty of any negligence in the premises, but the plaintiff was guilty of negligence which was the proximate cause of the accident. This was refused by the court, and the ruling is here assigned as error.

The main question to be here considered is whether, upon the special facts of this case, the alleged negligence of the defendant was a question of law or fact. The contention of the defendant is that when, as in this case, a municipality sets apart, marks out by curbing or otherwise, and improves a portion of a street as a boulevard, it is notice to the public that such part of the street is not intended for travel, and that any person who, without any necessity, and solely for his own convenience, uses it instead of the sidewalk, assumes all risk of injuries from obstructions thereon; or, in other words, that the city, when it has so withdrawn and improved a part of the street, is not bound to maintain it in a condition of safety for pedestrians who leave the safe sidewalk, and go upon the boulevard. The plaintiff, on the other hand, claims, as we understand her counsel, that when a city improves a street to its full width pedestrians have a right to travel on any part of the street, including the boulevard, without any necessity for so doing, and that the city is bound to exercise due care to keep all parts of the street relatively safe for public travel.

The right of a municipality to determine within reasonable limits what part of a street in a residence district shall be set apart for the roadway for travel of all kinds, what part for sidewalks for exclusive use of pedestrians, and what part for boulevards with grass, trees, and flowers planted thereon, is now undoubted. There are adjudged cases, decided in the early history of municipalities, when the stern taste and asceticism of the times could see no other use for a public street than a means of getting from one place to another, which are not in harmony with the rule we have stated. But in this state streets are laid out or dedicated for many purposes other than the accommodation of public travel in the ordinary way. They are intended for the purpose of furnishing light and air, and in the residence districts for boulevarding portions of them, thereby adding to the beauty of the city, and contributing to the health and happiness of its citizens. Of course, the primary purpose of a street is to accommodate public travel, but whenever any portion of a street not used for business purposes can be set apart for park or boulevard

purposes without any substantial impairment of such primary purpose, the municipality may set apart such portion for boulevards and other similar public purposes.

Having such right, and the marking out and improving of the boulevard being notice to pedestrians that it is not intended for the purposes of travel, it logically follows that the municipality is not bound to use due care to keep such portion of the street free from all obvious obstructions which are necessarily incident to its use as a boulevard, although they may endanger the safety of travelers thereon, even conceding, without so deciding, that a pedestrian, in the absence of a law or ordinance prohibiting it, has the technical legal right to travel wherever he pleases in the street. While this is true, yet the municipality has no right to maintain or permit others to do so, on its boulevards, and especially on those at the street corners, anything in the nature of a dangerous pitfall or trap, or snare, or like obstruction, whereby the traveler, yielding to the impulse of the average person to cut across the corner when in a hurry, may be injured. The trial court in substance so instructed the jury. Now, can it be held, as a matter of law, that the facts in this case do not bring it within this rule? This, in the last analysis of the evidence, is the pivotal question, and we answer it in the negative.

It will serve no practical purpose to repeat or discuss the facts, for we are of the opinion that they present a fair question upon which reasonable men might, and probably would, draw different conclusions. If the accident had occurred on the boulevard between the block lines, instead of the one at the street corner, the case would not be so clearly one for the jury. The question of the defendant's negligence and that of the plaintiff, including the assumption of the risk, was rightly left by the court to the jury.

Judgment affirmed.

COLLINS, J.

If this accident had occurred anywhere upon the boulevard except at the corner, I am of the opinion that, on the authorities, there could have been no recovery. But, in view of the fact as to the place where plaintiff was tripped, I think the case was for the jury.