ELVA MAE BRITTAIN v. CITY OF MINNEAPOLIS
AND OTHERS.

84 N. W. (2d) 646.

August 9, 1957—Nos. 37,048, 37,066.

378

*William H. DeParcq, Donald T. Barbeau, Chester D. Johnson,* and *Robert N. Stone,* for appellant.

*Charles A. Sawyer,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for respondent City of Minneapolis.

*Ralph T. Lilly,* for respondent Standard Oil Company.

*Durham, Swanson & Lasley,* for respondent Paffel.

NELSON, JUSTICE.

This appeal involves an action by the plaintiff, Elva Mae Brittain, for personal injuries suffered on April 8, 1954, when she allegedly tripped and fell because of a depression in a public sidewalk of the defendant city of Minneapolis. It is the claim of the plaintiff that the depression of the sidewalk had created an abrupt change in the level of about one and one-half to two inches between the sidewalk and an adjacent paved driveway crossing the boulevard and leading to the property owned by the defendant Standard Oil Company, and occupied by the defendant Wayne C. Paffel, d.b.a. Wayne's Standard Service. The plaintiff alleged that the defendants were negligent in the installation, inspection, maintenance, and repair of the public sidewalk and driveway in question thereby causing a serious defect and unsafe condition to exist in the sidewalk and driveway and that due to such defect the plaintiff was caused to sustain the injuries complained of. The city of Minneapolis denied negligence generally and alleged insufficiency of

the notice of claim to the city and contributory negligence on the part of the plaintiff. The Standard Oil Company alleged that the sidewalk and driveway in question were subject to the control of the city and therefore denied negligence generally and also alleged contributory negligence. Wayne C. Paffel denied negligence on his part and alleged that the other defendants were negligent and that the plaintiff was contributorily negligent.

The case was tried before a jury. At the close of the testimony, each defendant moved for a directed verdict. The motion was denied as to the city of Minneapolis but granted as to the other defendants. The jury thereafter returned a verdict for the plaintiff against the city.

The city thereupon moved for judgment notwithstanding the verdict and in the alternative for a new trial. The motion for judgment notwithstanding the verdict was granted. Judgment was entered pursuant to this order in favor of the city. Plaintiff appeals from the final judgment, seeking a reversal of the trial court's order granting judgment notwithstanding the verdict and that judgment be entered for the plaintiff and against the city pursuant to the verdict of the jury.

The plaintiff also noticed a motion for a new trial upon the issue of liability as to Standard and Paffel. This motion was denied by the trial court and plaintiff appeals from the order, seeking a new trial against defendants Standard and Paffel.

Briefly the facts are as follows: The plaintiff, who resided at 3656 Garfield Avenue South, Minneapolis, on the morning in question was walking toward a beauty shop located on the southwest corner of the intersection of Lyndale Avenue South and 34th Street. She walked through an alley which is to the rear of her home northerly to 36th Street where she crossed the street and walked west toward Lyndale Avenue. She then walked across the open area of the service station located on the northeast corner of the intersection of Lyndale Avenue and 36th Street which was owned by the defendant Standard and operated pursuant to lease by defendant Paffel. The beauty parlor to which she was going was located on the west side of Lyndale necessitating her crossing Lyndale at some point. When she had passed through the station and was on the public sidewalk paralleling the east side of Lyndale at a point adjacent to the Lyndale driveway approach

to the service station, she heard the Lyndale-and-36th semaphore click. She was then walking in a northerly direction. When she realized that the sign was changing, she turned to her left to cross Lyndale in order to avail herself of the favorable light. She was then near the edge of the sidewalk and its connection with the driveway which led from the sidewalk to the vehicular portion of Lyndale. It appears that she intended to change her northerly path of direction and walk down the driveway and across Lyndale in a westerly direction. In turning westerly and stepping forward, she tripped and fell on a change in level, stubbing her toe, because at that point the sidewalk was two inches lower than the driveway approach. There is testimony that this change in level was due to the sinking of the sidewalk and that this condition had existed over a considerable period of time.

Two photographs were received in evidence, reproductions of which are to be found in the printed record. These photographs were marked and received as plaintiff's exhibits A and B. Exhibit A was taken with the camera facing in a northerly direction toward the area involved. Witnesses placed markings thereon as "N," "S," and "D." The letters were placed within ovals showing the areas where plaintiff lay after she had tripped and fallen. Exhibit B is more of a close-up photograph looking in a westerly direction and shows the immediate vicinity of the alleged tripping of the plaintiff and bears the same markings "N," "S," and "D." It appears that these markings on both photographs designate the northerly sidewalk slab as "N," the southerly sidewalk slab as "S," and the driveway slab as "D." Several witnesses testified that there was a change in level between the sidewalk slab marked "N" and the sidewalk slab marked "S," the northerly slab being slightly higher than the southerly slab. These witnesses testified that there was approximately a two-inch change in level between the sidewalk slab marked "S" and the driveway slab marked "D" and a slightly less change in level between the sidewalk slab marked "N" and the driveway slab marked "D," the two sidewalk slabs being lower than the driveway slab. There was expert testimony to the effect that the change in level was due to a sinking of the sidewalk slabs rather than a rising of the driveway slab. Plaintiff's testimony is to the effect that when she took the step toward the driveway slab she stubbed her

toe and tripped on this change of level between the driveway slab marked "D" and the sidewalk slabs marked "N" and "S." The change in level testified to by the witnesses may be seen with reasonable clearness from the said exhibits, particularly the one marked plaintiff's exhibit A.

Defendant Paffel testified that he had known about the defect in the sidewalk since he first leased the station. Other witnesses also had known of it, and one expert witness who was a cement contractor testified that there was no doubt that the condition of the sidewalk had existed and was getting worse for a long time. There was testimony as to the number of vehicles, including trucks, which daily drove in and out of the station over the driveway. Expert witnesses assigned this factor as a contributing cause of the sinking of the sidewalk. There was testimony indicating that this immediate area including the sidewalk had at one time been a deep hole or depressed area and used as a dump; that there were indications of peat soil in the area; and that insufficient fill may well have been a factor involved in the sidewalk slabs' sinking below the cement portion of the adjacent driveway approach.

The plaintiff makes the following assignments of error: First, that the trial court erred in granting defendant city's motion for judgment notwithstanding the verdict; second, that the trial court erred in granting the motions of defendants Standard and Paffel for directed verdict in their favor at the close of the evidence; and, third, that the trial court erred in denying plaintiff's motion for a new trial on the issue of the liability of the defendants, Standard and Paffel. It appears that the defendant city in its motion for judgment notwithstanding the verdict argued three basic points as to why the motion should be granted, which were:

(1) That the Notice of Claim of the plaintiff served upon the City is insufficient in setting forth the location and nature of the defect.

(2) That the plaintiff was guilty of contributory negligence as a matter of law.

(3) That the City was free of actionable negligence as a matter of law.

The record indicates that the court granted the motion on the basis of the city's contention that it was free of actionable negligence as a matter of law. The trial court had previously ruled at the time of the trial that the notice of claim served upon the city was sufficient and that the plaintiff was not guilty of contributory negligence as a matter of law and therefore did not refer to or consider these questions in its memorandum which it attached to and made a part of the order.

In considering the questions raised here by plaintiff as appellant, the most favorable aspect must be ascribed to plaintiff's evidence. Since plaintiff has assigned error in the granting of the motions of defendants Standard and Paffel for directed verdicts in their favor at the close of the evidence, we have in mind the rule that a motion for a directed verdict accepts the view of the entire evidence most favorable to the adverse party and should be granted only in those unequivocal cases where in the light of the evidence as a whole it would be the duy of the trial court to set aside a contrary verdict as being manifestly against the entire evidence.[1]

■ The city contends that the plaintiff's notice of claim was defective in the following respects: That the site of the accident was not adequately described; that the defect causing the accident was not specified; and that the evidence produced at the trial was in fatal variance with the allegations in the notice. It seems to be well established that the purpose of the notice is to give the municipal officers information which will enable them to ascertain and investigate the facts and thus to determine whether a liability exists and if so the nature and extent of such liability. In Terryll v. City of Faribault, 81 Minn. 519, 84 N. W. 458, this court held that, except where the notice itself is misleading so as to prejudice the defendant, the notice will not be adjudged defective. In Harder v. City of Minneapolis, 40 Minn. 446, 42 N. W. 350, the notice of claim was held valid even though, in describing the accident area by reference to contiguous streets, one of the streets was erroneously named. This court held that despite the error reasonable diligence on the part of the city officers could have properly identified the site of the accident. It is true that where

[1] 19 Dunnell, Dig. (3 ed.) § 9764.

many factors may have caused the accident, a more precise identification may be required. The converse, however, ought to be equally true where only one logical cause exists. In the instant case it was alleged that the city was negligent in the installation, inspection, maintenance, and repair of said public sidewalk in front of said premises at 3551 Lyndale Avenue South to the extent that a serious defect and unsafe and dangerous condition was caused and permitted to remain in and upon said sidewalk. The testimony would indicate that the depression in the sidewalk was the only visible defect in the area where the accident happened.

■. We think the trial court properly ruled that the notice of claim served upon the city was sufficient in setting forth the location and nature of the defect. Kandelin v. City of Ely, 110 Minn. 55, 124 N. W. 449; Lyons v. City of Red Wing, 76 Minn. 20, 78 N. W. 868; O'Brien v. City of St. Paul, 116 Minn. 249, 133 N. W. 981; Larkin v. City of Minneapolis, 112 Minn. 311, 127 N. W. 1129. The city cites and relies on Olcott v. City of St. Paul, 91 Minn. 207, 97 N. W. 879. We have examined this case and think it clearly distinguishable because there the notice specifically alleged the accident to have been caused by a smooth and slippery condition of the walk, while at the trial the plaintiff attempted to prove that a hole in the walk caused the accident. Certainly the two conditions were patently different and the allegation of one could not include the other. This case has been distinguished many times and seems at best narrow authority for the proposition it contains. The city's argument on variance clearly seems to be without merit.

■ The more important question involved here is whether the defendant city was free of any actionable negligence as a matter of law. The question whether the plaintiff was guilty of contributory negligence as a matter of law was determined by the trial court against the city and in favor of the plaintiff, by the court's submission of that question to the jury as a fact issue. We think it was clearly a fact issue and that the trial court correctly determined that issue. The factual basis upon which the city takes its position that the plaintiff was guilty of contributory negligence as a matter of law is directed to parts in her testimony from which the city contends that it must be implied

that she was not paying particular attention as to where she was walking and at the time of the accident was actually looking back over her left shoulder towards the semaphore at the corner. The problem which the situation presents is the determination of the degree of care required to be exercised by a pedestrian while using public sidewalks and driveways.

The general rule is that pedestrians may assume that the city has exercised ordinary and reasonable care to maintain its sidewalks and streets in a safe condition. We think it is for the jury to decide, as a fact issue, whether in failing to see an obstruction or to remember one previously observed, a person is guilty of contributory negligence. McGandy v. City of Marshall, 178 Minn. 326, 227 N. W. 177; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671.

The city relies on Dehn v. Buck, 165 Minn. 310, 206 N. W. 435. In that case the scene of the accident was a recessed theater lobby that was open to the public street. As plaintiff in that case entered the lobby there were to her left two doors, one obviously leading to stairs that went to the second floor of the building where the plaintiff wanted to go. She, however, absent-mindedly entered an open door which led to the basement stairs. It was dark and as plaintiff reached for the light switch she expected to find, she fell down the stairs. It was held that she was contributorily negligent as a matter of law because she violated her duty to look as she crossed the threshold. Certainly this case is distinguishable on the facts. It was evening when the accident occurred and because of darkness a greater degree of care was necessary; furthermore, the plaintiff appeared to be completely oblivious to where she was going since she entered the wrong door, failing to observe where the entrance led to. Neither did there appear to be any discernible defects in the construction or design of the doors or in the stairs or in the way each was lighted or in the approach to either entrance.

We think the trial court in the instant case correctly submitted the issue of plaintiff's contributory negligence to the jury. Furthermore, if the accident did not occur upon the sidewalk but upon the immediate adjacent boulevard or driveway area, where it is contended the city would not expect pedestrians, the city's standard of required care

would only be of a lower degree and plaintiff's as a pedestrian's commensurately higher since plaintiff could not rely in the same degree upon the city's duty to maintain street areas outside of the sidewalk proper in an equally safe condition for pedestrians.

In Briglia v. City of St. Paul, 134 Minn. 97, 99, 158 N. W. 794, 795, L. R. A. 1916F, 1216, 1217, where the question arose whether defendant city was negligent in not maintaining a fence or barrier between a roadway and a bluff, the court said:

"* * * It is the duty of the city to use ordinary care to keep its streets in safe condition for travel. The city is not, as a rule, bound to make safe for travel *the area outside of a public street, nor to fence or erect barriers to prevent travelers from straying off the street to adjoining land upon which there may be dangerous places; but it is bound to provide such guards where the street itself is unsafe for travel by reason of the close proximity of excavations, embankments, deep water or other pitfalls or dangers.*" Cases cited. (Italics supplied.)

In McDonald v. City of St. Paul, 82 Minn. 308, 316, 84 N. W. 1022, 1024, which was a pedestrian case, the court said:

"* * * While this is true, yet the municipality has no right to maintain or permit others to do so, on its boulevards and especially on those at the street corners, *anything in the nature of a dangerous pitfall or trap, or snare, or like obstruction, whereby the traveler, yielding to the impulse of the average person to cut across the corner when in a hurry, may be injured.* The trial court in substance so instructed the jury. Now, can it be held, as a matter of law, that the facts in this case do not bring it within this rule? This, in the last analysis of the evidence, is the pivotal question, and we answer it in the negative.

"It will serve no practical purpose to repeat or discuss the facts, for we are of the opinion that they present a fair question upon which reasonable men might, and probably would, draw different conclusions. *If the accident had occurred on the boulevard between the block lines, instead of the one at the street corner, the case would not be so clearly one for the jury. The question of the defendant's negligence and that of the plaintiff, including the assumption of the risk, was rightly left by the court to the jury.*" (Italics supplied.)

The contention of the city that it was free from actionable negligence as a matter of law in the instant case rests on two theories: (1) That the defect was so minor as to render it impossible for the city to foresee the probability of an accident, and (2) that the accident occurred on that part of the driveway situated in the boulevard area where the city's lower requirement of care would not support a finding of negligence.

As to the first point, we think Mockler v. City of Stillwater, 246 Minn. 39, 74 N. W. (2d) 118, states the general rule which is to the effect that a municipal corporation is not charged with responsibility for every mere inequality or irregularity in the surface of the way, but liability may be attached if the defect is of such a nature that danger therefrom might reasonably be anticipated by a reasonably prudent person in the exercise of due care. However, in that case the court recognized that the fact that a defect was slight would not necessarily relieve the city of liability because the slight defect in its hidden nature could well cause a substantial risk to pedestrians unaware of its existence. Therefore, this court held in the Mockler case that it was for the jury to determine whether a defect, slight or major, renders the city negligent. The defect complained of in the instant case was not slight when compared to the defect complained of in the Mockler case. We agree with the city's contention that, when a city has rightly set apart and improved a part of a street for boulevard purposes, it is not bound to use the same degree of care as in the case of the sidewalk proper to keep such part free from all obvious obstructions which are necessarily incident to its use as a boulevard, though they may endanger the safety of travelers thereon. A city, however, has no right to maintain, or permit others to do so, on its boulevards and streets and especially on those at street corners or adjacent thereto or in the vicinity of driveways anything in the nature of a dangerous pitfall, or trap, or snare, or like obstructions, whereby the traveler or pedestrian may be injured. 13 Dunnell, Dig. (3 ed.) § 6819.

The trial court in its charge to the jury properly stated that, if the jury found the accident to have occurred on what it termed the boulevard, a lower requirement or degree of care should be applied. In its memorandum the trial court states that the accident did occur in

what it termed the boulevard area and therefore the city was entitled to judgment notwithstanding the verdict, citing McDonald v. City of St. Paul, *supra,* as authority for so holding. In that case, however, the abutting owner had used stakes and wire to support a tree located on a boulevard near the corner of an intersection. The stakes and wire were visible during the day but not at night. The plaintiff, in the evening, walked down the sidewalk and cut across the boulevard near the corner tripping over the wire. This court held that the city had the right to set aside areas of the right-of-way for aesthetic reasons or for purposes of public health, and having that right it followed that the city was not bound to exercise due care to keep the boulevard free from all obvious obstructions to pedestrian traffic. The court, however, modified what it had said by a statement to the effect that the city cannot allow abutting owners to construct pitfalls, traps, or snares whereby a traveler yielding to the impulse of the average person to cut across the corner may be injured. We do not think that the facts in the McDonald case aid the city's contentions nor that they are controlling in the city's favor in the case at bar. The city cites and relies upon Boyd v. City of Duluth, 126 Minn. 33, 147 N. W. 710; Callahan v. City of Virginia, 230 Minn. 55, 40 N. W. (2d) 841. These cases turn upon the proposition that, where injuries are caused by occurrences that cannot be reasonably foreseen, the city is not liable. The facts in those cases, however, are distinguishable and not controlling here.

The city's argument that pedestrians are not expected at points on the right-of-way, a substantial distance from the crosswalks, was rejected in Thoorsell v. City of Virginia, 138 Minn. 55, 163 N. W. 976. In that case plaintiff's injury was due to a hole located in the street approximately 40 feet from the nearest crosswalk. This hole was 4 inches deep, 6 feet long, and 2 feet wide. The plaintiff, having stepped off a motorcyle, took a few steps and then stepped into the hole and was injured. It was contended by the defense in that case that since the hole was a substantial distance from the crosswalk the defendant city had no reason to expect pedestrians to be in the area of the defect and thus anticipate probable injury to pedestrians on account of its existence. This argument was in that case specifically refuted and the

plaintiff permitted his recovery.

█ Cases in other jurisdictions have recognized that the standard of care required of a city is of a lower degree in the case of pedestrians traveling upon boulevards or other parts of the street as distinguished from the sidewalk proper. See, Annotations, 59 A. L. R. 387, 61 A. L. R. 267, and 19 A. L. R. (2d) 1053; 19 McQuillin, Municipal Corporations (3 ed.) § 54.128. The reason for the lower standard of care required under those conditions is based upon the theory that pedestrians do not usually travel outside of the sidewalk proper or on the boulevards. However, where the path which the pedestrian travels is different, the situation is not necessarily governed by the rule that applies to boulevards. In the instant case defendant Paffel testified that it was not uncommon for pedestrians to use the driveway when crossing Lyndale Avenue. Nevertheless, even if the boulevard test with its lower degree of care required on the part of the city is applicable, this case we think still presents a jury question. In view of the testimony that the sidewalk slabs and the adjacent paved driveway crossing the boulevard and leading to the property owned by defendant Standard had not been maintained on an even level due to sinking of the sidewalk slabs, we conclude that the question whether the city was negligent in installing, constructing, maintaining, and repairing the sidewalk and boulevard in the area where the accident occurred was for the jury to determine. We have said repeatedly that (Johnson v. Evanski, 221 Minn. 323, 327, 22 N. W. [2d] 213, 215):

"Taking, as we must, the view of the evidence most favorable to the verdict, a motion for a judgment notwithstanding, whether based on negligence or on contributory negligence, should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men."

█ Ordinarily, it is only where there is an entire absence of evi-

dence tending to establish negligence that a court can enter upon the province of the jury and direct a verdict for the defendant. LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522. Where reasonable men may differ as to what constitutes ordinary care and proximate causal connection upon the evidence presented, questions of negligence and proximate cause, as well as contributory negligence, are questions of fact for the jury; and it is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw only one conclusion that the question of negligence becomes one of law. Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357.

■ We think that the question whether the city of Minneapolis was negligent as a proximate cause and the plaintiff contributorily negligent was for the jury and therefore conclude that the plaintiff was entitled to have the verdict of the jury stand. We therefore direct that the judgment notwithstanding the verdict be vacated and judgment entered for plaintiff pursuant to the verdict of the jury. In that respect the order and judgment of the court below is reversed.

■ The plaintiff urges that the question of Standard's and Paffel's liability should likewise have been submitted to the jury and that the court erred in directing verdicts in their favor, citing several cases to sustain their contention but especially relying upon Graalum v. Radisson Ramp, Inc. 245 Minn. 54, 71 N. W. (2d) 904, a recent case of importance, significant on the question of abutting landowners' liability. The facts of that case, however, indicate that the abutting owners or occupants made an extraordinary use of the sidewalk for their own convenience and under the circumstances this court held that a duty was, upon the facts and circumstances there involved, owing to the public to exercise due care in regard to the affected portion of the sidewalk to the extent of maintaining it in a safe condition for the passage of pedestrians. The facts are distinguishable in the Graalum case from those in the instant case, and it is our view that the decision in the Graalum case is not controlling of the issues before this court as applied to Standard and Paffel.

We have examined the cases cited upon which plaintiff relies in determining whether the question of Standard's and Paffel's liability

was properly for jury determination. As we view it, all of the cases cited are distinguishable upon the facts and not controlling as to Standard and Paffel. The evidence indicates that the sidewalk slabs and the concrete installed on the driveway and boulevard adjacent to the sidewalk had their location where there are indications of insufficient fill at different points, in a formerly depressed area, and that the conditions which existed and of which plaintiff complains were due to the sinking of the sidewalk slabs installed by the city, a situation over which the city exercised its control. Since a municipality retains the primary duty and responsibility with respect to the maintenance and repair of public sidewalks and cannot shift said responsibility to the abutting occupant or property owner, it is clear that the abutting owner or occupant upon a street or sidewalk is not liable for any defect therein unless created by him or his agents or servants. Sternitzke v. Donahue's Jewelers, 249 Minn. 514, 83 N. W. (2d) 96. Plaintiff states in its brief that its motion for a new trial with respect to Standard and Paffel, and the appeal from the denial of the motions, are merely protective in nature. It urges that this court might, in justice, order a new trial solely upon the issue of liability between the city and Standard and its lessee Paffel, reinstating plaintiff's verdict below.

The city suggests to the court that it concurs with the plaintiff in its contention that the trial court erred in granting a directed verdict in favor of defendants Standard and Paffel, but states that it wishes to point out that the plaintiff's contributory negligence would bar her recovery against any of the defendants. We think the trial court was justified and clearly correct upon all the facts and the record as a whole in directing verdicts in favor of Standard and Paffel on the ground that said defendants were free of actionable negligence as a matter of law. Therefore, in directing the verdicts in favor of Standard and Paffel, we affirm the trial court.

Reversed in part and affirmed in part.