Cindy J. ACKERMAN, as Trustee for the heirs of Frank Ackerman, deceased, Appellant,

v.

AMERICAN FAMILY MUTUAL INSUR-ANCE COMPANY, David Gene Mykel-by, Third-Party Defendant, City of Min-neapolis, Third-Party Defendant, Re-spondents.

No. C4–88–1802.

Court of Appeals of Minnesota.

Feb. 21, 1989.

David J. Moskal, Peter H. Berge, Schwebel, Goetz & Sieben, P.A., Minneapolis, for Cindy J. Ackerman, as Trustee for the heirs of Frank Ackerman, deceased, appellant.

Michael D. Tewksbury, Eric Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for American Family Mut. Ins. Co., respondent.

Robert J. McGuire, Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for David Gene Mykelby, third-party defendant, respondent.

Robert J. Alfton, City Atty., Steven R. Fredrickson, Asst. City Atty., Minneapolis, for City of Minneapolis, third-party defendant, respondent.

Heard, considered and decided by HUSPENI, P.J., and NIERENGARTEN and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

Cindy J. Ackerman, as trustee for the heirs of Frank Ackerman, deceased, appeals from the summary judgment in favor of respondents David Mykelby and American Family Insurance Company which declared that as a matter of law David Mykelby was not grossly negligent. Appellant also argues, alternatively, that Minn.Stat. § 176.061, subd. 5(c) is inapplicable to the facts of this case or is unconstitutional. We affirm.

## FACTS

Frank Ackerman and David Mykelby, co-employees of the city of Minneapolis, both reported for work at about 6:45 a.m. on October 24, 1986. Their work day started at 7:00 a.m. Each received his work assignment at 121 Glenwood Avenue and proceeded to the city lot at 88 Glenwood Avenue to pick up assigned city vehicles for work that day. Ackerman walked to the lot while Mykelby drove his personal pickup truck. It was dark and rainy that morning, and Mykelby had his headlights and windshield wipers on. His windows were clear. Mykelby drove through the gate of the city lot, then dropped off a passenger at the garage door. Mykelby was not driving very fast as he turned to his left around a barricaded area. While making this turn, he saw the white of Ackerman's face suddenly appear in the beam of the headlights as Ackerman turned toward the Mykelby vehicle. Mykelby applied the brakes and the vehicle struck Ackerman, throwing him backward such that he struck his head. Ackerman was wearing dark pants and a dark sweatshirt with the hood pulled up and covering his faded orange cap. He was taken to the hospital and died later that day of a closed head injury. There was no evidence or allegation of intentional injury.

Appellant Cindy Ackerman brought a claim for underinsured motorist benefits against respondent American Family Insurance Company (American Family), based on her underlying wrongful death action for insured decedent Frank Ackerman. The complaint in this proceeding alleged that respondent Mykelby was grossly negligent in causing decedent's death and that appellant's damages exceeded the liability limits of respondent Mykelby's auto insurance policy. American Family moved for summary judgment, arguing that as a matter of law Mykelby was not grossly negligent. After the hearing on summary judgment, but before judgment was entered, appellant further asserted alternatively that Minn.Stat. § 176.061, subd. 5(c) was inapplicable to this case or was unconstitutional

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

as violating Minn. Const. art. I, § 8. In awarding summary judgment, the trial court did not explicitly address these two latter issues.

## ISSUES

1. Is Minn.Stat. § 176.061, subd. 5(c) applicable to this cause of action?

2. Does Minn.Stat. § 176.061, subd. 5(c) violate Minn. Const. art. I, § 8?

3. Did the trial court err in granting summary judgment for respondent?

## ANALYSIS

### I.

Minn.Stat. § 176.061, subd. 5(c) (1986), reads in pertinent part:

A coemployee working for the same employer is not liable for a personal injury incurred by another employee unless the injury resulted from the gross negligence of the coemployee or was intentionally inflicted by the coemployee.

While the trial court did not rule explicitly that this section was applicable in this case, the award of summary judgment unquestionably must rest upon the trial court's implicit recognition of applicability. Therefore, the trial court, in fact, rejected appellant's argument to the contrary and, thus, we shall address that issue.

A review of the cases cited by appellant convinces us that they do not support her argument of nonapplicability. Prior to 1979, if a co-employee breached a personal duty "an employee injured in the course of employment * * * [could] bring an action against a co-employee for the latter's negligence." *Dawley v. Thisius*, 304 Minn. 453, 455, 231 N.W.2d 555, 557 (1975) (citation omitted). However, a 1979 amendment to section 176.061, subd. 5(c) added the language cited above and further limited the action which *Dawley* recognized. *See* 1979 Minn.Laws Ex.Sess., ch. 3 § 31. *See also*

*Terveer v. Norling Brothers Silo Co., Inc.*, 365 N.W.2d 279 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985).

In *Peterson v. Kludt*, 317 N.W.2d 43 (Minn.1982), a case arising before the effective date of the statute at issue here, the supreme court stated:

One of the trade-offs in passing the Workers' Compensation Act was that one employee would not be eligible to sue another in a situation such as is presented here. To allow an employee to sue his fellow worker for negligence and thus permit his employer to be reimbursed from the recovery for workers' compensation benefits already paid is "to shift tort liability from employer to fellow employee in a manner never intended by the workers' compensation system." * * * Since this action was commenced, Minn. Stat. § 176.061, subd. 5 (1978) has been amended to make it specifically clear such an action could not be brought.

*Id.* at 48.[1] (Citation and footnote omitted).

Despite the clear language of section 176.061, subd. 5(c) and the case law construction, appellant appears to argue that decedent's death did not actually "arise out of" his employment and, therefore, section 176.061, subd. 5(c) is inapplicable and the simple negligence of Mykelby is sufficient to sustain this action against decedent's underinsurance carrier. Appellant's argument must fail.

First, appellant concedes in her brief to this court that:

[I]t is undisputed that David Mykelby and Frank Ackerman were co-employees [and] that they were both acting within the course and scope of their employment with the City of Minneapolis at the time of this fatal accident.

Thus, appellant concedes that decedent and respondent Mykelby were "working for the same employer" as required by section 176.061, subd. 5(c) at the time of the acci-

---

1. Appellant also cited *Peterson* for the proposition that because she has not elected to receive workers' compensation benefits, she is not bound by the election of remedies limitation set forth in Minn.Stat. § 176.061, subd. 1 and in *Peterson*, and may therefore pursue her action against Mykelby. There is no merit to this argument. Even if the election of remedies limitation is inapplicable here, the provisions of Minn.Stat. § 176.061, subd. 5(c) must still be considered.

dent. Appellant attempts, however, to take this situation out of the scope of section 176.061, subd. 5(c) by arguing that although the words "working for the same employer" may be broad enough to encompass those acts occurring "within the course of employment," the statutory language is not broad enough to bring within its scope those acts which merely "arise out of the employment."

Appellant urges that the accident here only "arose out of the employment" and did not occur during the "course of the employment." Therefore, continues appellant, the statute does not apply. We cannot agree.[2] The statutes of Minnesota do not exempt incidents which merely arise out of the employment relationship from the scope of section 176.061, subd. 5(c). There is no language in the statutes which would permit this court to place injuries occurring within the course of employment under the scope of section 176.061, subd. 5(c) while removing from that section's application those injuries which merely arose out of that employment relationship.

Appellant's reliance on *Saala v. McFarland*, 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400 (1965) to buttress her argument on the nonapplicability of section 176.061, subd. 5(c) is misplaced. *Saala* specifically construes two California statutes; one of which addresses an employee's right to compensation (for injuries "arising out of and in the course of employment"), and one of which addresses the liability of a co-employee (for injuries incurred while "acting within the scope of his employment").

Minnesota statutes do not make the distinctions that the California statutes do. Further, the *Saala* court itself, in discussing "whether 'acting within the scope of employment' * * * [had] the same meaning as 'arising out of and in the course of employment'" observed that the statutes of other jurisdictions were "too varied to be

presently helpful." *Id.* at 130, 45 Cal.Rptr. at 148 n. 4, 403 P.2d at 404 n. 4.

Further, we note that although the ruling of *Saala* enabled the injured employee to maintain a simple negligence action against a co-employee, the facts in that case are easily distinguishable from those here. The parties in *Saala* had concluded their day's employment and were departing their employer's parking lot when the injury occurred. Here, decedent and Mykelby were "both acting within the course and scope of their employment with the City of Minneapolis at the time of this fatal accident."

The provisions of Minn.Stat. § 176.061, subd. 5(c) are applicable in this case. Therefore, appellant may maintain her action against respondent American Family only if she may maintain her action against respondent Mykelby, and she may maintain her action against respondent Mykelby only if he is grossly negligent.

## II.

■ In a letter written to the trial court after submission of the summary judgment motions, appellant challenged Minn.Stat. § 176.061, subd. 5(c) as violative of art. I, § 8 of the Minn. Const. The trial court did not address this issue, nor did appellant seek post-judgment relief thereon. Therefore, it is questionable whether the constitutional challenge is properly before this court for review.[3] Nonetheless, we shall address appellant's arguments on their merits.

The burden is on a complainant to show beyond a reasonable doubt that a challenged statute is unconstitutional. *Federal Distillers, Inc. v. State*, 304 Minn. 28, 39, 229 N.W.2d 144, 154 (1975).

[E]very presumption should be exercised in favor of a statute's constitutionality and, whenever possible, the merits of a

---

2. We can and do agree with appellant, however, that section 176.061, subd. 5(c) would not apply to negligent injury of a co-employee where the tortfeasor and injured party are merely by happenstance co-employees and where the injury has no relationship to the work environment.

3. We do note that proper notice was given to the Minnesota Attorney General both in the trial court and on appeal pursuant to Minn.R.Civ.P. 24.04 and Minn.R.Civ.App.P. 144. The attorney general declined to intervene.

case should be decided without a determination of a statute's unconstitutionality. *Midland Glass Company, Inc. v. City of Shakopee*, 303 Minn. 134, 138, 226 N.W.2d 324, 326 (1975).

Article I, § 8 of the Minnesota Constitution provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property, or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Article I, § 8 has been interpreted as referring to the common law remedies available. *Haney v. International Harvester Co.*, 294 Minn. 375, 201 N.W.2d 140, 145 (1972).

At common law, the tort victim's right to recovery in negligence died with the tort victim. *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228 (Minn.1982). A wrongful death action is statutorily created. If indeed the "remedy in the laws" in article I, § 8 of the constitution refers only to common law remedies, not to statutorily created ones, there can be no derogation of appellant's rights in this case flowing from the 1979 amendments to subd. 5(c). Because the right of appellant to recover anything at all is grounded in the wrongful death statute, Minn.Stat. § 573.02 (1986), that right would not be protected by article I, § 8 of the constitution.

Even if the remedy of wrongful death recovery were protected by article I, § 8, these rights do not vest until after death but remain inchoate and subject to future legislation until vested by death. *Carroll v. State*, 242 Minn. 70, 82, 64 N.W.2d 166, 174 (1954). Because death occurred after the 1979 amendments, the rights were still inchoate when the statute was modified and there would be no constitutional impairment.

Further, even if we were to determine that Minn.Stat. § 176.061, subd. 5(c) affected common law remedy which appellant otherwise possessed, it is clear that there may be circumstances under which even a common law remedy may be destroyed by a statute without a reasonable substitute remedy if there is a legitimate legislative purpose. *Haney* 294 Minn. at 384–85, 201 N.W.2d at 145–46. Here the legislative purpose of a gross negligence standard is to correct the problem referred to in *Peterson:* the mischief of otherwise allowing an employer to be reimbursed the value of workers' compensation from a merely negligent co-employee. *Peterson*, 317 N.W.2d at 48. There can be little doubt that this purpose is legitimate and intended to enhance conformance with the overall workers' compensation scheme. *Id.* at 48.

Finally, we note that for whatever reason no claim has been made here for dependent survivor's workers' compensation. Under appropriate circumstances it may be that appellant has a remedy in that compensation.

We conclude that appellant has failed to meet her burden of proof in challenging the constitutionality of Minn.Stat. § 176.061, subd. 5(c) and find that section to be constitutional.

### III.

■ The trial court found there to be no question of material fact on the issue of gross negligence of respondent Mykelby, and determined as a matter of law that Mykelby was not grossly negligent. Thus, he was effectively shielded from liability in the death of decedent and, consequently, appellant would be unable to seek underinsured benefits from respondent American Family.

The court reviewing a summary judgment is to determine if there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the nonmoving party and all doubts and factual inferences are resolved against the moving party. *Lindner v. Lund*, 352 N.W.2d 68, 70 (Minn.Ct.App. 1984).

The Minnesota definition of "gross negligence" is "negligence of the highest degree." *High v. Supreme Lodge of the World,* 214 Minn. 164, 170, 7 N.W.2d 675, 679 (1943). A further explanation of "gross negligence" is given in *State v. Bolsinger,* 221 Minn. 154, 21 N.W.2d 480 (1946), where construction of a Minnesota criminal vehicular homicide statute which used alternative standards of recklessness or gross negligence was given. *Bolsinger* drew on the law of Massachusetts as the leading jurisdiction for development of the concept of gross negligence.

In the leading case of *Altman v. Aronson,* 231 Mass. 588, 591, 121 N.E. 505, 506, 4 A.L.R. 1185, where "gross negligence" is defined as very great negligence or absence of even slight care, but as not equivalent to wanton and willful wrong, the court said:

"Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. * * * But it is something less than the willful, wanton, and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured."

*Id.* at 159, 21 N.W.2d at 485.

*Bolsinger* is instructive in amplifying the theoretical definition of gross negligence. When comparing the facts of *Bolsinger* to the facts of this case, we note that the conviction in *Bolsinger* was sustained on the basis of gross negligence *or* recklessness. *Bolsinger* at 173–74, 21 N.W.2d at 492. The defendant's version of the facts in *Bolsinger* is similar to the facts in this case. *See id.* at 174–75, 21 N.W.2d at 492. The *Bolsinger* court concluded, although not as part of its holding,

if defendant's version of what occurred were true, he was not guilty, because then it would have been a clear case of unavoidable accident.

*Id.* at 176, 21 N.W.2d at 493.

In this case the undisputed facts show that it was dark and raining, that Mykelby was turning his vehicle around the barricaded area in the parking lot, that his speed was not very fast, that he first saw the victim when he appeared in the beam of the headlights, that the victim turned his face toward the vehicle and Mykelby applied his brakes, but the vehicle struck the victim and killed him.

Though certainly not exactly the same as the defendant's version in *Bolsinger,* the facts here are quite similar. In both cases the drivers knew or should have known there was some chance that a pedestrian may have been walking in an area in the path of the vehicle. In both it was dark and the victim appeared suddenly into view in the beam of the headlights. In both the drivers tried to take evasive or braking action which was ineffective.

On the defendant's version of the facts, the *Bolsinger* court would have found no liability. This conclusion at least suggests the appellant's difficulty in this case of showing a genuine issue of material fact as to gross negligence.

In the case of *Dakins v. Black,* 195 Minn. 91, 261 N.W. 870 (1935), the supreme court reversed the jury's finding of gross negligence in the operation of a motor vehicle. The accident in *Dakins* occurred in South Dakota, and the court applied a South Dakota guest statute that limited driver's liability to injured passengers to those cases where the accident was caused by the driver's gross negligence or willful and wanton misconduct. *Id.* at 94, 261 N.W. at 872.

The defendant in *Dakins* was driving on a gravel country road on a dark night at speeds of 50 to 55 m.p.h. The legal speed limit was 40. The driver observed an object about 200 feet ahead which turned out to be a cattle truck parked in the right hand lane. The driver slowed, then turned the steering wheel to pass the truck. The rear wheels of his car skidded and the car swerved, hitting the truck and killing one

of his passengers. *Id.* at 92–93, 261 N.W. at 871.

The *Dakins* court concluded that the driver was not guilty of gross negligence, but at most ordinary negligence due to speed in excess of the legal limit. The speed of the automobile was not sufficient to show gross negligence. *Id.* at 95, 261 N.W. at 872.

The *Dakins* case is strong support for the determination that as a matter of law Mykelby was not grossly negligent. It is difficult to propose anything Mykelby could have done differently to avoid the harm other than to have driven yet more slowly. The vehicle's speed alone is not sufficient to show gross negligence under the circumstances. *Id.*

Appellant has characterized the exculpated defendant's action in *Dakins* as "a single negligent act of excess speed." However, it is difficult to see how Mykelby's action could be anything greater.

Appellant correctly states that Mykelby cannot remember where he was looking prior to seeing the victim's face at the moment of impact, or how fast he was going, or how far he was from the victim when he saw him or how much time passed. Appellant urges that a plausible inference from these facts is that Mykelby was not paying any attention to what he was doing. However, if Mykelby had been utterly inattentive, as described by appellant, he probably would not have even applied the brakes. It is too great a leap to say an "utter lack of attentiveness" is a plausible inference from the facts in the record. On summary judgment, the court is not required "to save the non-moving party by drawing unreasonable inferences." *City of Savage v. Varey*, 358 N.W.2d 102 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 27, 1985).

Viewing the evidence in the light most favorable to the appellant, and resolving all reasonable inferences and doubts against the respondents, the record supports the determination of the trial court. There is no genuine issue of any material fact as to whether Mykelby's conduct was grossly negligent.

## DECISION

The summary judgment of the trial court dismissing appellant's action against respondents Mykelby and American Family Insurance Company is affirmed.

AFFIRMED.

LESLIE, Judge (concurring in part and dissenting in part).

I do not dispute either the constitutionality or applicability of Minn.Stat. § 176.061, subd. 5(c) (1986) to this case. I am concerned with the summary judgment disposition of the gross negligence issue, and must therefore respectfully dissent in part.

It is the law in Minnesota that "it is only in the clearest of cases that the question of negligence becomes one of law." *Martinco v. Hastings*, 265 Minn. 490, 501, 122 N.W.2d 631, 640 (1963).

> In each case, except when reasonable minds may not differ, the degree of care required, and whether it was exercised, are questions for the jury.

*Id.* at 500, 122 N.W.2d at 640. *See Van Tassel v. Hillerns*, 311 Minn. 252, 256–57, 248 N.W.2d 313, 316 (1976); *Brittain v. City of Minneapolis*, 250 Minn. 376, 390, 84 N.W.2d 646, 655 (1957).

*Martinco* involved a motor vehicle accident and the application of a certain standard of negligence, as does this case. Although the standard here may be gross negligence, and though appellant appears to concede the accident arose in the course and scope of employment, based on the facts in the record and the reasonable inferences therefrom, I am convinced that ultimate resolution of the question of gross negligence is best left to the collective wisdom of the jury.