**HONEYWELL, INC., Plaintiff,**

v.

**RUBY TUESDAY, INC., Defendant.**

**No. Civ. 97–2098 (DSD/JMM).**

United States District Court, D. Minnesota.

April 5, 1999.

Patrick J Rooney, Michael James McGuire, Kathy S Kimmel, Rider Bennett Egan & Arundel, Minneapolis, MN, for Honeywell, Inc., plaintiff.

Thomas Michael Kelly, Kelly & Jacobson, Minneapolis, MN, James C. Rawls, Powell Goldstein Frazer & Murphy, Atlanta, GA, for Ruby Tuesday, Inc, defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court (1) grants defendant's motion regarding the invalidity of the one-year limitations clause, (2) continues the parties' cross-motions regarding the validity of the attorney's fee clause, (3) grants in part and denies in part plaintiff's motion regarding the validity of the exoneration clause, and (4) denies the parties' cross-motions as they pertain to other issues.

## BACKGROUND

This case arises out of a dispute over alarm system contracts. For many years, defendant Ruby Tuesday, Inc. ("RTI") contracted with plaintiff Honeywell, Inc. concerning the installation, monitoring, and maintenance of fire and burglar alarms at approximately 160 RTI restaurants in 27 states. Although almost identical in form, separate contracts were negotiated for each RTI restaurant. The pertinent provisions of the form contract will be quoted as necessary in the discussion below.

In 1996, after what RTI alleges was a rash of alarm system failures, RTI stopped making payment on these contracts. In 1997, after several unsuccessful attempts to obtain payment from RTI, Honeywell terminated its contracts with RTI and

brought this diversity action against RTI in federal court, claiming breach of contract and unjust enrichment. Early in 1998, RTI filed a counterclaim against Honeywell, alleging that Honeywell had itself breached the contracts. The parties now bring cross-motions for summary judgment, asking the court to rule on a number of threshold legal issues before they begin discovery.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 250, 106 S.Ct. 2505. However, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548.

### B. Honeywell's Breach of Contract Claim

■ Honeywell first moves for summary judgment on its breach of contract claim. In doing so, however, Honeywell has failed to meet its threshold burden under Rule 56(c), which requires that the moving party identify those portions of the record supporting its contention that there is no genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (quotation omitted). At this early point in the proceedings, the record consists merely of the pleadings, a copy of the form contract at issue, some correspondence between the parties, RTI's initial disclosures, and the affidavit of Frederick P. Isaacs, Director of Loss Prevention at RTI, attesting to Honeywell's failure to perform its duties under the contract. Honeywell has pointed to nothing in that record that undermines the factual basis of RTI's defense as set forth in its pleadings and in Isaacs's affidavit. Consequently, the court must wait until after the close of discovery before assessing whether the parties have demonstrated the existence or nonexistence of genuine factual issues. *See Iverson v. Johnson Gas Appliance Co.,* 172 F.3d 524, 530 (8th Cir.1999) ("If the failure to allow discovery deprives the nonmovant of a fair chance to respond to the motion, . . . summary judgment is not proper."); *Hanson v. FDIC,* 13 F.3d 1247, 1253 (8th Cir. 1994) ("At a minimum, the moving party must demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim [or defense]."); *Rosemount Cogeneration Joint Venture v. Northern States Power Co.,* 1991 WL 13729 *9 (D.Minn. 1991) ("On a blank record, these questions of fact and law are not amenable to summary judgment.").

### C. Acceleration Clause

RTI brings a motion asking the court to void the acceleration clause contained in Clause 10(A)(i). However, Honeywell now concedes that, in the event the company

prevails on its claims, it is entitled to benefit of the bargain damages only. The court therefore concludes that RTI's motion regarding this issue is moot.

## D. Attorney's Fee Clause

■ The parties bring cross-motions regarding the validity of the attorney's fee provision contained in Clause 10(A)(i). RTI contends that this clause, which entitles Honeywell to recover 35 percent of the outstanding balance as attorney's fees, functions as a penalty and is therefore unenforceable. Honeywell argues that this clause is enforceable as a matter of law because it was freely entered into by two sophisticated corporate entities dealing at arm's length. At this early point in the litigation, however, the court is not in a position to make a determination one way or the other regarding the validity of this clause. A stipulated attorney's fee provision is generally entitled to a presumption of reasonableness. *See Smith v. Combustion Resources Engineering, Inc.*, 431 So.2d 1249, 1252 (Ala.1983). The reasonableness of the stipulated fee is, however, only a presumption. If, at the close of the litigation, the court determines that a 35 percent fee is unreasonably high, then the fee will be reduced to a reasonable amount.[1] In the meantime, the court asks the parties to reserve their motions on this issue until later in the proceedings.

## E. One–Year Limitation Period

The parties also bring cross-motions regarding the validity of the one-year limitation period contained in Clause 4(B) of the contract:

> NO SUIT OR ACTION SHALL BE BROUGHT AGAINST HONEYWELL MORE THAN ONE (1) YEAR AFTER THE ACCRUAL OF THE CAUSE OF ACTION THEREOF.

RTI asserts that Alabama law should govern the court's evaluation of this provision. Honeywell, on the other hand, contends that Minnesota law should control.

■ A federal court sitting in diversity must apply the choice of law principles of the state in which it sits. *See Minnesota Mining and Mfg. Co. v. Kirkevold,* 87 F.R.D. 324, 331 (D.Minn.1980). When conducting a choice of law analysis under Minnesota law, the court's threshold task is to decide whether the choice of one state's law over another creates an actual conflict. *See Jepson v. General Cas. Co. of Wis.,* 513 N.W.2d 467, 469 (Minn.1994). If an actual conflict is detected, the court's next step is to determine whether the law involved is procedural or substantive. *See Gate City Fed. Sav. & Loan Ass'n v. O'Connor,* 410 N.W.2d 448, 450 (Minn.App. 1987) If the court concludes that the law involved is procedural, then it will apply the law of the forum, i.e., Minnesota law, without further analysis. *See Davis v. Furlong,* 328 N.W.2d 150, 153 (Minn.1983) ("[Minnesota follows] the almost universal rule that matters of procedures and remedies [are] governed by the law of the forum state."). However, if the court concludes that the law involved is substantive, then it must apply the five choice-influencing factors first articulated by the Minnesota Supreme in *Milkovich v. Saari:* (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; (5) application of the better rule of law. 295 Minn. 155, 203 N.W.2d 408, 412 (1973). Finally, as a general matter, the court must bear in mind the requirements of the federal constitution when conducting the foregoing analysis: " '[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a sig-

---

1. However, the court will not grant RTI's request to completely strike the attorney's fee provision. As authority cited by RTI itself states: "[I]f the stipulation is for a certain sum or percentage of attorney's fees which is grossly out of proportion to the value of the services, it may well be regarded as … excessive or oppressive. *The court may, in such a case, allow a reasonable amount only.*" 17A Am.Jur.2d, Contracts § 301 (1990) (emphasis added).

nificant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (quoting *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)).

■ Here, there is an apparent tension between the laws of Minnesota and Alabama regarding one-year contractual limitation clauses.[2] Under Alabama law, a clause of this kind is illegal per se insofar as it limits the time in which RTI may bring an action against Honeywell to less than that provided by Alabama's statute of limitations. *See* Ala.Code § 6–2–15 ("[A]ny agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void.").

■ Under Minnesota law, however, "[i]t is generally held that contracts stipulating a limited time within which an action may be brought thereon are valid unless unreasonable." *Henning Nelson Constr. Co. v. Fireman's Fund Amer. Life Ins. Co.,* 383 N.W.2d 645, 650 (Minn.1986); *see*

*also* Minn.Stat. sec. 541.05, subd. 1 ("[T]he following actions shall be commenced within six years: (1) Upon a contract or other obligation, express or implied, *as to which no other limitation is expressly prescribed....*" (emphasis added)). Because of this apparent tension, the court will assume for purposes of analysis that an actual conflict exists between the laws of Minnesota and Alabama.[3]

■ The next step requires the court to determine whether the law involved is procedural or substantive. Honeywell contends that because Minnesota courts consider statutes of limitations procedural, *see Davis,* 328 N.W.2d at 153, Minnesota law should control. As RTI points out, however, the present case involves a contractual limitations period, not a statutory limitations period. And issues related to the interpretation and validity of contractual provisions are inarguably substantive in nature. *See Despatch Oven Co. v. Rauenhorst,* 229 Minn. 436, 40 N.W.2d 73, 77 (1949) ("[T]he purpose of a written contract is to define and limit the duties, obligations, and liabilities of the contracting parties flowing therefrom."); *Jepson,* 513 N.W.2d 467, 469–73 (choice of law question involving the validity of a contractual provision subjected to *Milkovich* analysis).[4]

---

**2.** As for the other legal issues raised in the parties' motions, the parties seem to agree that Alabama and Minnesota law do not conflict. Thus, in addressing these other issues, the court will follow the lead of the parties and draw freely from the caselaw of both states.

**3.** In fact, this may be assuming too much. Despite the apparent tension between Alabama and Minnesota law on the issue of contractual limitations periods, RTI makes a persuasive argument that there is no actual conflict when the two laws are applied to the facts of the present case. First, the Minnesota Supreme Court has held that a one-year limitation period is "unreasonably short" in the context of a casualty loss insurance policy, a setting analogous to that of the present case. *Henning Nelson,* 383 N.W.2d at 651. Second, the supreme court has stated that it will not enforce contractual provisions limiting liability if it finds that the agreement

"create[s] an imposition or advantage to either" party. *Independent Consolidated Sch. Dist. No. 24, Blue Earth Co. v. Carlstrom,* 277 Minn. 117, 151 N.W.2d 784, 787 (1967). Here, the one-year limitation period restricts RTI's ability to sue, not Honeywell's, thereby granting Honeywell a significant contractual advantage.

Thus, it may well be that, even under Minnesota law, the one-year limitations period would be deemed unreasonable and therefore invalid. In the interest of fully addressing the arguments of both parties, however, the court will proceed with its choice of law analysis.

**4.** The present case demonstrates precisely this point: when evaluating the contractual limitations provision under Minnesota law, the court is required to carry out a substantive analysis of whether the limitations period is reasonable or not. *See Henning Nelson,* 383 N.W.2d at 650; *supra* note 3.

Moreover, Minnesota law recognizes an exception to the general rule that statutes of limitations are procedural: when a limitation period "does not merely bar the remedy for the violation of a right, but limits or conditions the right," it is considered substantive. *See Fredin v. Sharp*, 176 F.R.D. 304, 308 (D.Minn.1997). This exception typically applies when a statute creating a specific right contains its own limitations provision. *See id.* However, the present case involves a closely analogous scenario: the rights of the parties were created and defined by the contracts, so that the limitation period contained therein may properly be understood to substantively condition those rights. Having concluded that contractual limitations are an issue of substantive law, the court must now conduct an analysis under *Milkovich*. The contracts at issue in this case were signed and delivered in Alabama and payment was made from RTI's headquarters in Alabama. Further, Minnesota's connection to the contracts is based solely on its status as Honeywell's corporate home. Thus, with regard to the first two *Milkovich* factors—predictability of result and maintenance of interstate order—the conclusion of the Minnesota Supreme Court in *Jepson* applies equally to this case: "preserving the parties' justified expectations and enhancing the predictability of what state's law will govern in a contractual dispute points away from application of Minnesota law." 513 N.W.2d at 471. With regard to the third *Milkovich* factor, simplification of the judicial task, the application of Alabama law presents no special challenge to this court. Finally, with regard to the fourth and fifth factors—advancement of the forum's governmental interest and application of the better law—Minnesota has no strong policy interest in promoting contractual limitations periods of less than the statutory prescription. Indeed, the Minnesota Supreme Court has stated that "[s]uch provisions are not generally favored and are strictly construed against the party invok-

ing them." *Henning Nelson*, 383 N.W.2d at 651; *see also Prior Lake State Bank v. National Surety Corp.*, 248 Minn. 383, 80 N.W.2d 612, 616 (1957) In sum, application of the *Milkovich* factors weighs heavily in favor of applying Alabama law.[5] Thus, the court will grant RTI's motion regarding the invalidity of the one-year limitations period.

## F. Clauses Limiting Liability

Finally, Honeywell moves the court for a ruling that certain clauses contained in the contracts protect it from liability. Under both Minnesota and Alabama law, contractual provisions limiting liability are generally disfavored. *See Schlobohm v. Spa Petite*, 326 N.W.2d 920, 923 (Minn.1982); *Alabama Great Southern Railroad Co. v. Sumter Plywood Corp.*, 359 So.2d 1140, 1145 (Ala.1978). As the Minnesota Supreme Court stated in *Schlobohm*, "[a] clause exonerating a party from liability will be strictly construed against the benefitted party. If the clause is either ambiguous in scope or purports to release the benefitted party from liability for intentional, willful or wanton acts, it will not be enforced." 326 N.W.2d at 923.

Here, three contractual clauses purport to limit Honeywell's liability. First, Clause 4(A) provides:

that Honeywell is not liable for losses which may occur in cases of malfunction or nonfunction of any system provided by Honeywell, that Honeywell is not liable for losses which may occur in the monitoring, repairing, signal handling or dispatching aspects of the service, even if due to Honeywell's negligence or failure of performance; that Honeywell is not liable for losses resulting from failure to warn or inadequate training.

Second, in the event that the exculpatory provision in Clause 4(A) is "judicially determined to be invalid or unenforceable," the contract provides that Honeywell's lia-

---

5. This ruling obviates the need for the court to address the difficult question of whether Minnesota substantive law can be constitutionally applied under *Shutts*.

bility is limited to the lower of $10,000 or the annual service charge—in this case, $360 per contract. *See* Honeywell Contract, cl. 4(B). Third, the contract expressly disclaims all warranties, express or implied, with respect to the security systems. *See* Honeywell Contract, cl. 4(F). As the case law makes clear, however, Honeywell cannot limit by contract its liability for intentional or grossly negligent acts. Thus, while the foregoing provisions are effective against RTI's allegations of passive or negligent breach of contract, they do not foreclose RTI from bringing a counterclaim based on Honeywell's willful negligence or intentional acts. *See Morgan Co. v. Minnesota Mining & Mfg. Co.,* 310 Minn. 305, 246 N.W.2d 443, 448 (1976) (exculpatory clause valid as to acts of negligence but not applicable to claims of "willful and wanton negligence, intentional misconduct, and fraud and misrepresentation"); *Armi v. Huckabee,* 266 Ala. 91, 94 So.2d 380, 384 (exculpatory clause may not bar claims for "active" negligence). Nor can these provisions limit the monetary amount of Honeywell's liability for such conduct. *See D.L. Lee & Sons v. ADT Sec. Systems, Mid–South,* 916 F.Supp. 1571, 1583 (S.D.Ga.1995) ("A clause in a contract limiting liability for negligent acts does not serve to limit liability for willful or wanton conduct."). To conclude otherwise would allow Honeywell to obtain through the back door of damages limitations what the law says it cannot achieve through an express exoneration clause. Accordingly, the court concludes that RTI's counterclaim remains viable to the extent it complains of willfully negligent or intentional conduct.

■ Finally, Honeywell argues that RTI has not alleged conduct by Honeywell egregious enough to meet the threshold of willful negligence. The court disagrees. As recently stated by a Minnesota court in the context of liability under a burglar alarm contract:

> Willful and wanton negligence is the failure to exercise ordinary care after discovering a person or property in a position of peril. . . . It contemplates that the injury to be avoided is not only foreseeable, but impending. Thus a cause of action for willful and wanton negligence arises where there has been "a reckless disregard of the safety of the person or property of another by after and not before discovering the peril to exercise ordinary care to prevent the impending injury."

*Peterson v. Honeywell, Inc.,* 1994 WL 34200 * 4 (Minn.Ct.App. Feb.8, 1994) (quoting *Brannan v. Shertzer,* 242 Minn. 277, 64 N.W.2d 755, 757 (1954)). Here, RTI generally alleges that Honeywell "fail[ed] to provide the service promised in the contracts" and "negligently and ineptly provid[ed] those services which Honeywell did provide." RTI's Answer and Counterclaim, at 6. RTI also specifically alleges that Honeywell "ineptly secur[ed] RTI's contracted-for premises," "notifi[ed] the wrong persons in the event of alarms," "harrass[ed] RTI," "fail[ed] to detect actual burglaries," and "fail[ed] to remedy problems upon RTI's reasonable requests." *Id.* at 7. Depending on the circumstances, this alleged conduct may support a claim based on willful and wanton negligence. However, the court cautions RTI that once discovery has closed, the court will closely examine whether the record evidence reasonably supports a claim against Honeywell based on willfully negligent or intentional acts.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for partial summary judgment regarding the invalidity of the one-year limitations clause is granted.

2. The parties' cross-motions for partial summary judgment regarding the validity of the attorney's fee clause are continued.

3. Plaintiff's motion for partial summary judgment regarding the validity of the exoneration clause is granted in part and denied in part.

4. The parties' cross-motions as they pertain to other issues are denied.