# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1340

_____

Jerry & Golda Washington,

    Plaintiff - Appellant,

v.

Countrywide Home Loans, Inc.,

    Defendant - Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Western District of Missouri.
\*
\*
\*

_____

Submitted: September 9, 2011
Filed: September 9, 2011

_____

Before RILEY, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Jerry W. and Golda M. Washington sued Countrywide Home Loans, Inc. under the Missouri Second Mortgage Loan Act (MSMLA), Mo. Rev. Stat. §§ 408.231- .241. The Washingtons alleged, for a putative class, that Countrywide charged them unauthorized interest and fees in violation of section 408.233.1 of the MSMLA. The case was removed from state court on diversity grounds based on the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court granted summary judgment for Countrywide. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

In April 2005, the Washingtons applied for a second mortgage loan from Countrywide. The principal amount of the loan was $23,000, payable over 15 years at 12 percent interest. Before closing, Countrywide sent the Washingtons a Settlement Statement on a form, U.S. Department of Housing and Urban Development Settlement Statement (HUD-1). The HUD-1 statement notified them of four additional charges in connection with the loan: (1) $690 loan discount, (2) $100 settlement/closing fee, (3) $60 document processing/delivery fee, and (4) $37.80 in prepaid interest. These fees were included in the $23,000 principal. The Washingtons signed the HUD-1.

The Washingtons signed the loan agreement on April 21. Within the next five days, a Countrywide audit determined that the $690 loan discount and the $100 settlement/closing fee should not have been assessed. Countrywide wired Servicelink (the title company) $790, which was paid to the Washingtons as part of their disbursement. Servicelink revised the HUD-1 statement to reflect the payment, removing $790, the amount of the loan discount and the settlement/closing fee. The Washingtons were not told of the final HUD-1 statement and never asked to sign it. Interest on the loan began accruing April 26 and the first disbursement of the loan proceeds, including the extra $790, was made on April 28.

On appeal, the Washingtons allege that Countrywide violated the MSMLA by charging them all four amounts listed above. This court filed an opinion, ___ F.3d ___, 2011 WL 3189435, which is now vacated.

This court first considers the $690 loan discount and $100 settlement/closing fee. The district court did not decide whether these two charges violated the MSMLA, holding that because these amounts were paid to the Washingtons in the first disbursement, they suffered no loss and thus lacked standing. This court reviews de novo the grant of summary judgment, viewing all evidence most favorably to, and making all reasonable inferences for, the non-moving party. *Country Life Ins. Co. v. Marks*, 592 F.3d 896, 898 (8th Cir. 2010).

To recover actual damages for a violation of the MSMLA, a person must suffer "any loss of money or property" as a result of a violation. *See* **Mo. Rev. Stat. § 408.562**. The facts in this case are undisputed. Countrywide charged the Washingtons $790 for the loan discount and settlement/closing fee, which was financed as part of the principal of the loan. Although the Washingtons received the $790 as part of the loan disbursement, Countrywide did not reduce the principal by $790. Countrywide argues, and the district court agreed, that because the $790 was disbursed to the Washingtons, they suffered no loss.

Countrywide's disbursement of the $790, however, did not make the Washingtons whole. During the two days between April 26 (the date interest began) and April 28 (the date the Washingtons received the first disbursement, including the $790), the Washingtons paid 12 percent interest but were not able to use the $790 – which constitutes "any loss of money."[1] *See* ***Fielder v. Credit Acceptance Corp.***, 19 F. Supp. 2d 966, 982 (W.D. Mo. 1998), *vacated in part on other grounds*, 188 F.3d 1031 (8th Cir. 1998) (applying § 408.562, the district court awarded actual damages to the class members who paid excess interest). The Washingtons have raised a material issue of fact as to whether they suffered "any" loss.

Countrywide further objects that the Washingtons cannot establish causation that any loss was "as a result" of the alleged MSMLA violations. Countrywide asserts that because the Washingtons received the $790, they must present evidence that they would have changed the terms or amount of the loan if they had received notice of the extra $790. Because interest accrued for the two days before the Washingtons

---

[1] Purely for purposes of standing as to "any loss of money," the Washingtons may have such a loss during the life of the loan, depending on whether the interest rate on the $790 exceeds what they made on the $790.

received the $790 as a result of the alleged MSMLA violations, the Washingtons have raised a material issue of fact as to whether the alleged violations caused their loss.[2]

On appeal, the Washingtons request that summary judgment be entered for them on the $690 loan discount and the $100 settlement/closing fee. The district court entered summary judgment for Countrywide based on the Washingtons' lack of statutory standing. Neither party moved for summary judgment on, and the district court did not consider, whether the loan discount and settlement/closing fees violated the MSMLA. This court cannot decide whether the $690 loan discount and the $100 settlement/closing fee violated the MSMLA. *See Williams v. City of St. Louis*, 783 F.2d 114, 116 (8th Cir. 1986) (this court remanded to the district court issues improperly decided on summary judgment because "a court may not pose the issue and then proceed to decide the same without a motion for summary judgment"); *Global Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 844 (8th Cir. 2008) ("[A] determination of summary judge *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond."); *see also Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 947 (8th Cir. 2009) (after reversing the district court's dismissal of a claim as time-barred, this court remanded the remaining issues, which the district court had not considered); *Missouri Coalition for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1212-13 (8th Cir. 2008) (remanding FOIA segregability issue to the district court where the record was unclear whether the court had considered and rejected the issue, or did not consider it at all).

As for the $60 document processing/delivery fee, the district court held that it was an authorized closing cost under § 408.33.1(3) of the MSMLA. Missouri regulates the fees lenders may charge in connection with a second mortgage loan. *See*

---

[2]Just as with the issue of standing as to "any loss of money," the Washingtons may be able to show that any loss over the life of the loan was "as a result" of the alleged MSMLA violations.

**Mo. Rev. Stat. § 408.233**. In exchange for allowing lenders to offer interest rates that exceed the statutory usury rate, the MSMLA limits the closing costs and fees that lenders may charge. *See* ***Thomas v. U.S. Bank N.A. ND***, 575 F.3d 794, 796 n.1 (8th Cir. 2009) ("The limits on closing costs and fees provided for in the MSMLA act as a trade-off for allowing lenders to charge a higher interest rate on second mortgage loans."); *see also* ***U.S. Life Title Ins. Co. v. Brents***, 676 S.W.2d 839, 841 (Mo. App. 1984) (explaining the MSMLA as a "fairly comprehensive" consumer protection measure that regulates "the business of making high-interest second mortgage loans on residential real estate"). Specifically, § 408.233.1(3) authorizes "[b]ona fide closing costs paid to third parties which shall include . . . (b) Fees for *preparation* of a deed, settlement statement, or other documents." **Mo. Rev. Stat § 408.233.1(3)** (emphasis added).

The Missouri Court of Appeals, in *Mitchell v. Residential Funding Corp.*, addressed and rejected Countrywide's arguments here. 334 S.W.3d at 499 (transfer denied by Supreme Court on April 26, 2011). In a diversity case, the law declared by the state's highest court is binding. *See* ***Erie v. Tompkins***, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state . . . whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision . . . ."). The Missouri Supreme Court allowed the *Mitchell* opinion to stand as authority by denying transfer of the case from the court of appeals. The *Mitchell* case is, thus, the best evidence of Missouri law. "Decisions from Missouri's intermediate appellate court (the Missouri Court of Appeals) . . . must be followed when they are the best evidence of Missouri law." ***Bockelman v. MCI Worldcom, Inc.***, 403 F.3d 528, 531 (8th Cir. 2005); *see also* ***Eubank v. Kansas City Power & Light Co.***, 626 F.3d 424, 427 (8th Cir. 2010) ("When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence

of Missouri law."); ***Travelers Prop. Cas. Ins. Co. of Am. v. National Union Ins. Co. of Pittsburgh,*** 621 F.3d 697, 707 (8th Cir. 2010) (same); ***United Fire & Cas. Ins. Co. v. Garvey***, 328 F.3d 411, 413 (8th Cir. 2003) (same). *See generally **Salve Regina College v. Russell***, 499 U.S. 225, 230, 238 (1991) (holding that "[w]hen *de novo* review is compelled, no form of appellate deference [to the District Court's determination of state law] is acceptable").

This court follows the *Mitchell* decision to resolve whether the $60 document processing/delivery fee was an authorized charge. In *Mitchell*, the court of appeals affirmed the directed verdict that specific fees charged by lenders, including a "loan discount," a "processing fee" and a "federal express" fee, violated the MSMLA. 334 S.W.3d at 495-99. The defendants there argued that they should have been given an opportunity to present evidence that a charge identified on the HUD-1A form[3] as a "loan discount" was really an "origination fee," which is a permissible charge under the statute. *See **id.*** at 499, *interpreting* **§ 408.233.1(5)**. The court of appeals rejected this argument, explaining that an origination fee should have been included in the HUD-1A's line entitled "origination fee," not in the line entitled "loan discount." *See **Mitchell***, 334 S.W.3d at 499. The court of appeals denied defendants the opportunity to re-characterize the charged fees. Instead, the HUD-1A's identification of the fees determined whether they were permissible. *See **id***. ("[T]he HUD-1A's were documents *evidenced as a matter of law* and *showed as a matter of law* that [certain disputed fees] were not third party charges." (emphasis in original)).

Like the defendants in *Mitchell*, Countrywide attempts to re-characterize the document processing/delivery fee as document preparation, which is an authorized charge under § 408.233.1(3)(b). *See* **§ 408.233.1(3)(b)** (authorizing "[b]ona fide closing costs paid to third parties which shall include . . . (b) Fees for preparation of

---

[3] The HUD-1A, a Settlement Statement for "Transactions without Sellers," is identical to the HUD-1 Settlement Statement here for all relevant provisions.

a deed, settlement statement, or other documents"). The Washingtons' final HUD-1 form has a line for "Document Preparation" and a separate line for "Document Processing/Delivery." On the Washingtons' final HUD-1 form, Servicelink was paid $60 for a "Document Processing/Delivery" fee. The "Document Preparation" line was left blank, after the audit by Countrywide's compliance specialist. Nevertheless, Countrywide, relying on dictionary definitions of "preparation," asks this court to determine that the services performed by Servicelink were "preparation" of documents, and thus authorized by § 408.233.1(3)(b). This is precisely what the *Mitchell* court rejected. As in *Mitchell*, this court on de novo review holds Countrywide to its final HUD-1 characterization; the charged services were for "document processing/delivery" in its final HUD-1.

Countrywide further argues that even if the document processing/delivery fee was not explicitly authorized, section 408.233's list is not exclusive and permits additional "bona fide closing costs paid to third parties." Unfortunately, a conflict exists between the Missouri Court of Appeals and another district court as to whether section 408.233.1(3)'s enumerated list of authorized fees is exclusive. *Compare Mitchell*, 334 S.W.3d at 498 (holding that section 408.233's list of permissible closing costs is exclusive), *with **Mayo v. GMAC Mortg., LLC***, 763 F. Supp. 2d 1091, 1104 (W.D. Mo. 2011) (holding that section 408.233's "enumerated fees are simply examples, not an exclusive list"). Again, this court follows the *Mitchell* court in determining that section 408.233's list is exclusive. *See **Erie***, 304 U.S. at 78. Because the document processing/delivery fee is not included in section 408.233's exclusive list of authorized charges, it violated the MSMLA. *See also **Mitchell***, 334 S.W.3d at 495-99 (affirming the circuit court's directed verdict that a "Processing Fee" and a "Federal Express Fee" were not authorized and thus violated the MSMLA).

Finally, the Washingtons contend that the $37.80 in prepaid interest Countrywide charged violates the MSMLA. "Section 408.236 provides that by violating the MSMLA's fee limitations, Defendants were barred 'from recovery of

any interest on the contract.'" ***Mitchell***, 334 S.W.3d at 506.  Because the document processing/delivery fee violated the MSMLA, the prepaid interest Countrywide collected on the Washingtons' loan was an additional violation of the statute. *See* ***id***. at 502-03 (affirming jury instruction "to find liability if it believed Defendants 'directly or indirectly charged, contracted for, or received interest in connection with' the [second mortgage] loans").

This court reverses and remands to the district court for proceedings consistent with this opinion.

_____