# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2545

———————

Christine Gage,                         *

Appellant,             *    Appeal from the United States
                                 *    District Court for the
v.                       *    District of Minnesota.
                                 *

HSM Electronic Protection Services,   *
Inc., doing business as Stanley        *
Convergent Security Solutions, Inc.,   *
                                 *

Appellee.            *

———————

Submitted: February 17, 2011
Filed: September 14, 2011

———————

Before WOLLMAN and BYE, Circuit Judges, and FLEISSIG,[1] District Judge.

———————

BYE, Circuit Judge.

Christine Gage purchased a security alarm for her home in 2006 from HSM Electronic Protection Services, Inc. ("HSM"), which was later purchased by Stanley Convergent Security Solutions ("Stanley"). In 2008, Stanley received a low-temperature alarm from Gage's home but failed to contact Gage or any of the contacts listed on her account. A few months later, the low temperature caused a pipe to burst

---

[1] The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, sitting by designation.

resulting in significant damage to the home. Gage sued Stanley claiming Stanley did not respond properly to the alarm and therefore is liable for over $250,000 in damages for willful and wanton negligence, intentional misconduct, fraud, and misrepresentation. The parties filed cross-motions for summary judgment. The district court denied Gage's motion and granted summary judgment in favor of Stanley. Gage appeals contending the district court applied an incorrect theory of law. We agree, reversing and remanding for further proceedings.

I

In 2006, Christine Gage contracted with HSM, Inc., for the installation of a security system and monitoring services. The "Residential Agreement" signed by Gage includes the following exculpatory clause:

> **HSM's Limit of Liability.** . . . CUSTOMER AGREES THAT HSM IS NOT RESPONSIBLE FOR PERSONAL INJURY OR OTHER LOSSES WHICH ARE ALLEGED TO BE CAUSED BY IMPROPER OPERATION OR NON-OPERATION OF THE SYSTEM AND/OR SERVICE, including cases where the system and/or service never functions whether due to defects in the system and/or service or HSM's acts or omissions in receiving and responding to alarm signals. Customer further agrees that HSM is not an insurer and that insurance, covering personal injury and other losses, shall be obtained by Customer.

Joint App'x at A25. The agreement also includes an anti-subrogation clause:

> **No Subrogation.** Customer does hereby for himself/herself and other parties claiming under him/her, release and discharge HSM from and against all claims arising from hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against HSM. This paragraph shall be void if contrary to local law or if Customer's homeowner's insurance policy specifically prohibits this type of waiver.

-2-

Id. at A26.  Finally, the agreement contained language limiting HSM's liability: "IF ANY LIABILITY IS IMPOSED ON HSM, ITS EMPLOYEES, AGENTS OR REPRESENTATIVES, IT WILL BE LIMITED TO SIX (6) TIMES THE MONITORING CHARGE PROVIDED ABOVE OR TWO HUNDRED FIFTY DOLLARS ($250.00), whichever is greater."  Id. at A25.  Some time after this contract was signed, but before the incident disputed in this case occurred, HSM was purchased by Stanley and as a result, Gage's service was handled thereinafter by Stanley.

At 4:30 a.m. on November 21, 2008, Stanley received an alarm indicating the temperature in Gage's residence was low.  The Stanley operator, Mary Bachman, who was a contract employee from a temporary agency, acknowledged the warning at 4:31 a.m. and, using an automated feature in the system, initiated a call to Gage's residence at 4:33 a.m.  One minute later, Bachman inputted the following response to the call: "answer CUST ADVISED."  The incident was then closed.

Stanley's policy directs an operator, upon acknowledging an alarm, to first contact the residence, and if no response is received, to call the persons identified on a customer call list.  Gage had provided an updated call list on two occasions: June 6 and June 12, 2007.  The first updated list included three contacts' names and numbers, the second adding a fourth contact.  However, on November 21, 2008, despite the operator's notation indicating she advised the customer of the alarm, she did not.  No one was present in Gage's home at that time and Gage never received any call or message informing her of the low temperature alarm.  Gage further alleges the number called by Bachman had actually been disconnected.  Additionally, none of Gage's listed contacts received a call from Stanley either.  Stanley, who has a regular practice of making audio recordings of all calls to its customers' premises, could not locate any recording of the alleged contact made by Bachman and therefore admits it is possible Bachman did not speak with anyone.  Stanley contends it was likely Bachman was

dealing with multiple incoming calls at one time and may have entered information for a different customer's alarm on Gage's account by mistake.

Because no one was informed of the low temperatures at the residence, and because no one was residing in the home at the time, the low temperature was not corrected. Two months after the alarm, on January 16, 2009, the furnace in Gage's home failed due to the low temperature and the persistent cold ultimately caused a pipe to burst. The damage to Gage's home was estimated at $252,310.79. Gage's insurer paid Gage for the damages, but Gage filed this action alleging Stanley's actions constituted willful and wanton negligence, intentional misconduct, fraud, and misrepresentation, subrogating her insurer to the claim.

Both parties thereafter filed motions for summary judgment. Stanley argued it was entitled to summary judgment because the Agreement exculpates it from liability for any acts or omissions in responding to alarm signals and further prohibits subrogation actions. Gage sought summary judgment contending the actions by Bachman constituted, as a matter of law, willful and wanton negligence, which under Minnesota law gives rise to a liability that cannot be contracted away as a matter of public policy. On June 14, 2010, the district court granted Stanley's motion for summary judgment, holding Stanley's actions did not rise to anything more than ordinary negligence and therefore the claim was barred by the exculpatory clause. In reaching this conclusion, the district court relied heavily on cases from New York in which conduct similar to Stanley's was determined not to amount to gross negligence. The district court also dismissed Gage's claims of intentional misconduct, fraud, and misrepresentation for failing to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). The district court did not address whether the anti-subrogation clause in the Agreement barred the subrogation claim. Gage appeals the grant of summary judgment on her claim of willful and wanton negligence.

II

We review de novo a district court's grant of summary judgment. Myers v. Lutsen Mountains Corp., 587 F.3d 891, 892 (8th Cir. 2009). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 893; Fed. R. Civ. P. 56(c). Because this case is before us on diversity jurisdiction, we must "apply the substantive law of the forum state, Minnesota." AMCO Ins. Co. v. Inspired Techs., Inc., — F.3d —, 2011 WL 3477188, at *4 (8th Cir. August 10, 2011) (internal quotation marks and citation omitted). "[T]he law declared by the state's highest court is binding." Washington v. Countrywide Home Loans, Inc., — F.3d —, 2011 WL 3189435, at *3 (8th Cir. July 28, 2011) (citing Erie v. Tompkins, 304 U.S. 64, 78 (1938)). If the Minnesota Supreme Court has not yet addressed the issue, we may consider "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data," including intermediate appellate court decisions if they are the "best evidence" of state law, to predict how the highest court of the state would resolve the issue. Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 516 n.13 (8th Cir. 2010); see also AMCO Ins. Co, 2011 WL 3477188, at *4 ("[I]f the state law is ambiguous, this [c]ourt predicts how the highest court of that state would resolve the issue.") (internal quotation marks and citation omitted). We review the district court's application of state law de novo. Id.

The Agreement between Gage and Stanley purports to exculpate Stanley from liability arising out of any act or omission on the part of the company or its employees. Under established Minnesota law, such exculpatory clauses are disfavored and will not be enforced if the clause "purports to release the benefitted party from liability for intentional, willful or wanton acts." Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 924 (Minn. 1982). Specifically, the Minnesota Supreme Court has explained exculpatory clauses do not violate public policy when applied to claims

of ordinary negligence, but do violate public policy, and are therefore unenforceable, against claims of "willful and wanton negligence." Morgan Co. v. Minn. Mining & Manuf., 246 N.W.2d 443, 448 (Minn. 1976). Thus, Gage survives summary judgment only if, viewing the facts in the light most favorable to Gage, a reasonable fact finder could conclude Stanley's actions, or failure to act, amounted to willful and wanton negligence. See Pye v. Nu Aire, Inc., 641 F.3d 1011, 1018 (8th Cir. 2011) ("If there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate.") (internal quotation marks and citation omitted).

In finding the facts legally insufficient to establish Gage's claim for willful and wanton negligence, the district court concluded Minnesota law is unclear as to what constitutes willful and wanton negligence because it has intermingled that claim with a claim of gross negligence. Consequently, the district court determined the Minnesota courts would require a showing of gross negligence for a plaintiff to avoid the application of an exculpatory clause and, relying on several cases from New York, concluded Stanley's actions "did not evince the recklessness necessary to avoid the exculpatory clause between Gage and Stanley" because "Stanley's conduct is akin to the conduct held to be insufficient to constitute gross negligence as a matter of law [in the New York cases]." District Court's Opinion and Order ("Order") at 8. After a thorough review of Minnesota law, we cannot agree with the district court as to willful and wanton negligence being indistinguishable from gross negligence and, furthermore, we do not view New York law on gross negligence relevant to the case at hand.

To begin, there are several Minnesota Supreme Court cases defining the claim of willful and wanton negligence and those cases are binding upon this court when considering a case based on diversity jurisdiction. See Washington, 2011 WL 3189435 at *3. The claim of willful and wanton negligence is defined as "a failure to exercise ordinary care after discovering another in a position of peril." Bryant v.

-6-

N. Pac. Ry. Co., 23 N.W.2d 174, 179 (Minn. 1946). As the Minnesota Supreme Court acknowledges, this willful and wanton negligence "doctrine" is unique and "peculiar to Minnesota." Its name, "willful and wanton negligence," is essentially a "'misnomer,'" id. (quoting Mueller v. Dewey, 198 N.W. 428, 429 (Minn. 1924), and has been criticized at times because "a negligent act is usually the result of inadvertence, whereas a willful or wanton act is one done with a consciousness of probable results but with reckless indifference to them." Mueller, 198 N.W. at 429. Nevertheless, the court continues to call the doctrine willful and wanton negligence because "the expression has become firmly imbedded in the vocabulary of judges and lawyers as a synonym for willful or wanton injury." Id. The Minnesota Supreme Court explained in 1971, this doctrine of willful and wanton negligence, which is also referred to as the "discovered-peril" doctrine, "does not require a showing of malice, actual intent to injure the person, or even negligence of a grosser degree than lack of ordinary care." Jacoboski v. Prax, 187 N.W.2d 125, 128 (Minn. 1971). Instead, the doctrine permits a plaintiff to recover when "'the defendant might, by the exercise of care, have avoided the consequences of [the peril].'" Id. (quoting Fonda v. St. Paul City Ry. Co., 74 N.W. 166, 170 (Minn. 1898)). Thus, "a plaintiff may recover damages for harm caused to him while in a position of peril . . . if the person causing the harm actually knew that the person harmed was in such a position and had sufficient time and ability to avert the harm but failed to use due care to do so." Id. In other words, if a person fails to exercise ordinary care after (1) the peril was present, and (2) the peril was known to the person, his ordinary negligence rises to a higher level of negligence—willful and wanton negligence.

Despite the Minnesota Supreme Court cases recognizing and developing this "peculiar" doctrine, the district court points to a number of cases which it concludes "appear to blur the distinction between gross negligence and willful and wanton negligence." Order at 6. The district court specifically cites two Minnesota Court of Appeals cases, Beehner v. Cragun Corp., 636 N.W.2d 821, 829-830 (Minn. Ct. App. 2001) and Hanson v. Bieloh, No. A06-1619, 2007 WL 1893315, *2-3 (Minn. Ct. App.

-7-

July 3, 2007), as well as two federal district court cases, Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074, 1080 (D. Minn. 1999) and American Litho, Inc. v. Imation Corp., No. 08-CV-5892, 2010 WL 681298, *6-7 (D. Minn. Feb. 23, 2010).

These cases which the district court found to "blur" the distinction between gross negligence and wilful and wanton negligence should only be relied upon so long as the issue at hand has not been addressed by the Minnesota Supreme Court and, for the court of appeals cases, only to the extent they are the "best evidence" of Minnesota law. Praetorian Ins., 604 F.3d at 516 n.13. We previously detailed the precedent of the Minnesota Supreme Court defining the claim of willful and wanton negligence and thus we do not find it necessary to consider either the court of appeals cases or the federal district court cases. But, even giving thorough consideration to each case, we cannot agree with the district court's reliance on any of these cases because the court of appeals cases do not appear to be the best evidence of Minnesota law and the federal district court cases do not equate willful and wanton negligence to gross negligence.

Turning first to the two cases from the federal district court, Honeywell and American Litho, Inc., we fail to see how these cases imply willful and wanton negligence is akin to gross negligence. In fact, Honeywell makes no mention of gross negligence. 43 F.Supp.2d at 1079-80. In addressing whether several clauses limiting Honeywell's liability are enforceable, the court recites Minnesota law stating such clauses "do not foreclose [a victim] from bringing a [claim] based on [another's] willful negligence or intentional acts" and then defining willful negligence as "'the failure to exercise ordinary care after discovering a person or property in a position of peril.'" Id. at 1080 (quoting Peterson v. Honeywell, Inc., 1994 WL 34200 *4 (Minn. Ct. App. Feb. 8, 1994 (unpublished)). Similarly, American Litho, Inc. also does not treat willful and wanton negligence as interchangeable with gross negligence. Instead, it reinforces the distinctions between the two claims in that it quotes Honeywell's definition of willful negligence and then defines gross negligence as

"very great negligence or absence of even slight care." 2010 WL 681298, at *6 (internal quotation marks and citation omitted). Although American Litho, Inc. describes the two claims as "similar," we fail to see how either American Litho, Inc. or Honeywell "blur" the line between these two claims.

Considering next the Minnesota Court of Appeals cases relied upon by the district court, we remain unpersuaded to deviate from the Minnesota Supreme Court precedent distinguishing willful and wanton negligence from gross negligence. In Beehner, the court of appeals did lump gross negligence and willful and wanton negligence together in describing them both as "greater-than-ordinary negligence," and further stated "[g]ross negligence is 'very great negligence or absence of even slight care, but [it is] not equivalent to wanton and willful' conduct." 636 N.W.2d at 829 (quoting Ackerman v. Am. Family Mut. Ins. Co., 435 N.W.2d 835, 840 (Minn. Ct. App. 1989)) (second alteration in original). Hanson cites the same definitions as Beehner and then goes further to apparently blur the distinction between gross negligence and willful and wanton negligence by holding summary judgment was appropriate in that case because the plaintiff failed to prove "respondents' conduct was willful, wanton, or grossly negligent." 2007 WL 1893315, at *2-3. Debatably, we could agree with the district court as to each of these cases treating willful and wanton conduct as either the same or something more severe than gross negligence. However, to the extent these cases do so, they rely on Ackerman v. American Family Mutual Ins. Co., another Minnesota Court of Appeals case.

But, if Ackerman is properly scrutinized, it appears to the extent it blurs the line between willful and wanton negligence and gross negligence, it does so in contradiction to established Minnesota Supreme Court precedent. The relevant language in Ackerman states "'[g]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence . . . . but it is something less than the willful, wanton, and reckless conduct.'" Id. at 840 (quoting State v. Bolsinger, 21 N.W.2d 480, 485 (Minn. 1946) (quoting Altman v. Aronson, 121 N.E. 505, 506

(Mass. 1919))). Notably, this language is quoted from a Minnesota Supreme Court case, <u>Bolsinger</u>, which in turn is quoting a Massachusetts Supreme Judicial Court case, <u>Altman</u>. At face value, the language relied on by the court of appeals in <u>Ackerman</u> infers willful and wanton negligence is a *greater* form of negligence than gross negligence. But this reading is incorrect for two significant reasons. First, this holding is in direct contradiction to <u>Jacoboski</u>, the 1971 Minnesota Supreme Court case which stated willful and wanton negligence "does not require a showing of malice actual intent to injure the person, or even *negligence of a grosser degree* than lack of ordinary care." 187 N.W.2d at 128. Second, <u>Ackerman</u> cites to <u>Bolsinger</u>, which is a Minnesota Supreme Court case from 1946—several years before <u>Jacoboski</u>—indicating <u>Bolsinger</u> may no longer be the most reliable authority on a willful and wanton negligence claim. Even more significant, <u>Bolsinger</u> deals exclusively with criminal negligence in the context of criminal vehicular homicides. As noted in <u>State v. Engle</u>, 743 N.W.2d 592, 594-95 (Minn. 2008), <u>Bolsinger</u> interpreted recklessness and gross negligence in the context of a particular statute and it was not intended to be a definition adopted into other schemes. Thus, the Minnesota Court of Appeals in <u>Ackerman</u> was possibly incorrect to rely on <u>Bolsinger</u> in the torts arena. Finally, the relevant part of <u>Bolsinger</u> does not discuss willful and wanton *negligence*, only willful and wanton *conduct*, 21 N.W.2d at 485, providing a perfect example of the confusion feared by the Minnesota Supreme Court when it expressed concern about the willful-and-wanton-negligence doctrine being misnamed. <u>See</u> <u>Mueller</u>, 198 N.W. at 429.

For these reasons, we conclude the district court erred in finding the line between willful and wanton negligence and gross negligence blurred. The Minnesota Supreme Court's case law recognizing and developing willful and wanton negligence is still valid, provides a precise definition of the claim, and is therefore binding upon our court. Consequently, we disagree with the district court's reliance on New York

case law applying gross negligence as "instructive" despite there being "a principled distinction between willful and wanton negligence and gross negligence." Order at 7.

The New York cases are legally distinguishable. In each of those cases, the court is looking for something more than the failure to exercise ordinary care, such as "outrageous acts of folly" because each of those cases is premised on a claim of gross negligence. Hartford Ins. Co. v. Holmes Prot. Grp., 673 N.Y.S.2d 132, 133 (N.Y. App. Div. 1998) ("Delayed or inadequate response to an alarm signal, without more, is not *gross negligence*." (emphasis added)); see also Consumers Distrib. Co. v. Baker Prot. Servs., 609 N.Y.S.2d 213, 213 (N.Y. App. Div. 1994) (considering a claim of gross negligence); Sanif, Inc. v. Iannotti, 500 N.Y.S.2d 798 (N.Y. App. Div. 1986) (same); Advance Burglar Alarm Sys. v. D'Auria, 488 N.Y.S.2d 416 (N.Y. App. Div. 1985) (same); Dubovsky & Sons v. Honeywell, Inc., 454 N.Y.S.2d 329 (N.Y. App. Div. 1982) (same). The New York courts define gross negligence as "conduct that evinces reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Hartford Ins., 673 N.Y.S.2d at 132 (internal quotation marks and citations omitted). The type of conduct the New York courts sought was a higher threshold than Minnesota's willful and wanton negligence standard. As clarified in Jacoboski, willful and wanton negligence does not require an intentional act, but rather requires one to exercise ordinary care when confronted with a person or property in known peril. 187 N.W.2d at 128. The New York cases applied a higher standard—gross negligence—and therefore, despite their factual similarities to the present case, we do not find these cases instructive.

We therefore hold the district court misapplied Minnesota law. Furthermore, based on our review of the record, we conclude genuine issues of material fact still remain as to whether Stanley's operator was willfully and wantonly negligent in failing to follow procedure after learning of Gage's low temperature alarm. The evidence available at the time of summary judgment does not foreclose a conclusion

-11-

in favor of either party. The Stanley operator failed to properly respond to the alarm from Gage's residence, but the question remains as to whether the operator was willingly ignoring her duty, whether she was distracted by other calls, or whether there was another explanation for her failure to contact anyone about the alarm. The evidence on this issue is at best circumstantial, but a reasonable jury could determine the operator chose to ignore the warning based on facts such as the alarm incident being closed within one minute of her initiating the call to the residence and the record establishing this same operator similarly disregarded an alarm on an earlier occasion. A genuine issue of material fact still exists as to whether the operator, who knew of the peril present in Gage's home, exercised reasonable and ordinary care in response. For that reason, summary judgment was not appropriate and the case should be remanded for further proceedings.

## IV

Accordingly we reverse and remand for further proceedings.[2]

_____

_____

[2]We decline HSM's invitation to affirm the entry of summary judgment on the alternative issue of whether Gage's insurer's claim is barred by the contract's anti-subrogation clause. The district court did not rule on that issue in the first instance, but may consider the defense upon remand. See Cody v. Weber, 256 F.3d 764, 769 n.2 (8th Cir. 2001).