# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: November 17, 2025
Decided: November 19, 2025

Theodore A. Kittila, Esquire (*argued*)
James G. McMillan, III, Esquire
HALLORAN FARKAS + KITTILA
5722 Kennett Pike
Wilmington, Delaware 19807

Robert J. Katzenstein, Esquire
David A. Jenkins, Esquire
SMITH, KATZENSTEIN & JENKINS[1]
1000 North West Street, Suite 1501
Wilmington, Delaware 19801

John W. Black, Esquire
LASHGOLDBERG
100 SE 2nd Street, Suite 1200
Miami, Florida 33131

Samuel J. Buffone, Jr., Esquire
BUFFONE LAW GROUP
4301 Connecticut Avenue, Suite 452
Washington, District of Columbia 20008

RE:  *Surf's Up Legacy Partners, LLC, et al. v. Virgin Fest, LLC, et al.*
  C.A. No. N19C-11-092 PRW CCLD
  Virgin Fest, LLC's Motion for Attorney's Fees

Dear Counsel:

This Letter Decision and Order addresses Virgin Fest, LLC's Motion for

Attorney's Fees (D.I. 452).  For the reasons explained now, that motion is

---

[1]  Robert K. Beste, Esquire—then with Smith, Katzenstein & Jenkins LLP—was trial counsel and argued the present post-trial application on behalf of Virgin Fest, LLC.  Mr. Beste has since changed firms and withdrawn from representation in this case.  *See* Entry of Appearance (D.I. 462).

**GRANTED, in part,** and **DENIED, in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

This dispute began in 2019 over claims of breaches of contract and fraud surrounding the dissolution of a business relationship between KB Eventpro, LLC and its related entities ("Eventpro") and VFLA Eventco, LLC and KSD Ownco, LLC (collectively, "Virgin"). Eventpro altered its financials to make itself a more attractive sale target.[3] Then, Eventpro and Virgin executed the Asset Purchase Agreement ("APA") through which Virgin purchased substantially all of Eventpro's assets.[4] Eventpro and Virgin also executed the Master Services Agreement ("MSA") to produce a music festival in Los Angeles, and the Production Services Agreement ("PSA") to produce future festivals in the San Diego area for a period of ten years unless terminated earlier.[5] After failing to turn a profit at a festival and Eventpro's subsequent staffing issues, Virgin notified Eventpro of its right to terminate the agreements.[6] Soon after, the parties terminated the contracts and litigation

---

[2] Mindful that the parties have a complete understanding of and familiarity with the factual background and applicable agreements, the Court dispenses with a fuller recounting thereof here.

[3] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2024 WL 1596021, at *1 (Del. Super. Ct. Apr. 12, 2024) (Decision After Trial) ("*Surf's Up V*") (D.I. 440).

[4] *Id*. at *10.

[5] *Id*. at *11.

[6] *Id*. at *1.

commenced.[7]

At trial, Eventpro's claims included breach of the APA, MSA, and PSA and an accompanying implied covenant of good faith and fair dealing claim.[8] Conversely, Virgin litigated fifteen counterclaims at trial relating to all three deals.[9] Eventpro's claims were unsuccessful.[10] Virgin lost on its fraud claims against Eventpro but won on some of its contract claims.[11] After a seven-day bench trial, and its written decision after trial, the Court entered judgment, explaining:

> VFLA Eventco, LLC is entitled to an award of its reasonable attorneys' fees and expenses against Eventpro Production Services, LLC, formerly known as KB Eventpro, LLC, for those claims on which it has prevailed under the Master Services Agreement, as defined in the Decision After Trial and pursuant to the terms of that agreement, and KSD Ownco, LLC, formerly known as San Diego Fest Ownco, LLC, is entitled to an award of its reasonable attorneys' fees and expenses against Eventpro Production Services, LLC, formerly known as KB Eventpro, LLC, for those claims on which it has prevailed under the Production Services Agreement, as defined in the Decision After Trial 8 and pursuant to the terms of that agreement, and VFLA Eventco, LLC and KSD Ownco, LLC shall submit applications seeking such fees and affidavits itemizing the expenses incurred and services rendered within sixty days of this order.[12]

---

[7] *Id.* at *13.

[8] *Id.*

[9] *Id.* at *13–14.

[10] *Id.* at *27.

[11] *Id.* at *15–26.

[12] Order of Judgment at 2–3 (D.I. 449).

Virgin then filed this motion. Virgin attached lists of the fees and expenses incurred in the form of bulk invoices from the several firms that represented Virgin throughout the litigation.[13]

## II. PARTIES' CONTENTIONS

Virgin moves for attorney's fees and costs for the entire litigation under the PSA and MSA.[14] Having been declared the prevailing party, Virgin asserts that it deserves the fee award it requests with no need for any further reasonableness showing. In its view, the PSA and MSA's language obviates that need—put simply, whatever Virgin submits as fees and expenses should be deemed reasonable.[15]

Eventpro opposes Virgin's motion largely because it lacks evidentiary support.[16] According to Eventpro, the fee-shifting provisions refer to the attorneys' hourly rates when they state that such rate or rates shall be deemed reasonable.[17] Additionally, Eventpro argues that Virgin's submissions thus far do not support the purported reasonableness of its bulk fee demand since they do not disclose any

---

[13] Virgin Fest, LLC's Motion for Attorneys' Fees (hereinafter, the "Atty's Fees Mot.") Ex. 1 (D.I. 452).

[14] Atty's Fees Mot. at 1.

[15] *Id*. at 5.

[16] Eventpro Production Services, LLC's Opposition to Virgin's Motion for Attorneys' Fees and Expenses ("Eventpro's Opposition") at 1 (D.I. 455).

[17] *Id*. at 2–3.

attorney hourly rates or the identities of the attorneys and legal professionals who provided those services.[18]  Invoking the Rule 1.5(a) factors, Eventpro asserts that Virgin has not carried its burden to establish that the fees, as requested, are reasonable.[19]  Lastly, Eventpro claims that attorney's fees accrued under the APA should not be shifted since the APA does not have a fee-shifting condition.

In response, Virgin maintains that Delaware law doesn't require it to submit the actual billing details or hourly rates because the PSA and MSA say that the costs "shall be deemed reasonable."[20]  Virgin then attests that—though the Court does not have to do so—the Court should find that the requested fees and expenses are reasonable under the Rule 1.5(a) factors.[21]  What's more, Virgin contends, Delaware courts use an "all-or-nothing" approach to fee shifting, and the PSA and MSA fee-shifting provisions do not award fees based on a partial basis.[22]  Thus, Virgin says, the Court should award it fees related to all claims on which it prevailed.[23]

---

[18]  *Id*. at 3.

[19]  *Id*. at 1–13.

[20]  Virgin's Reply Supporting its Motion for Attorneys' Fees and Expenses ("Virgin's Reply") at 4 (D.I. 458).

[21]  *Id*. at 4–7.

[22]  *Id*. at 8–9.

[23]  *Id*. at 9.

## III. APPLICABLE LEGAL STANDARDS

The Court has considerable discretion in determining the reasonableness of an award of attorneys' fees.[24] The party seeking an award of attorney's fees and expenses shoulders the burden of establishing that the amount sought is reasonable.[25] In reviewing a fee award pursuant to a prevailing-party contract provision, the Court will "generally exclude excessive, redundant, duplicative, or otherwise unnecessary hours[.]"[26] For a court to assess reasonableness, Delaware precedent "directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct."[27] The Rule 1.5(a) factors are:

(1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     The fee customarily charged in the locality for similar legal services;

---

[24]   *Mahani v. EDIX Media Corp.*, 935 A.2d 242, 245 (Del. 2007); *Gerlofs v. Citizens Bank, N.A.*, 2024 WL 1855354, at *8 (Del. Super. Ct. Apr. 29, 2024) ("As noted, the Court has substantial discretion on these issues because determining a reasonable fee is necessarily an imprecise exercise." (quotations omitted)).

[25]   *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at *3 (Del. Ch. Nov. 8, 2021).

[26]   *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *5 (Del. Ch. Dec. 20, 2004).

[27]   *Mahani*, 935 A.2d at 246.

(4)    The amount involved and the results obtained;

(5)    The time limitations imposed by the client or by the circumstances;

(6)    The nature and length of the professional relationship with the client;

(7)    The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    Whether the fee is fixed or contingent.[28]

## IV. ANALYSIS

### A. VIRGIN IS ENTITLED TO FEES AND COSTS BUT DOES HAVE TO MAKE CERTAIN REASONABLENESS SHOWINGS.

In the Decision After Trial, the Court concluded that Virgin had a right to obtain "its reasonable fees on the claims it has prevailed upon under the PSA and MSA."[29]  When determining reasonableness, and "[w]hen evaluating attorneys' fees, the Court is not required to do a line-by-line review of the billable hours or invoices charged, rather the Court is only tasked with weighing the factors of Delaware Lawyers Rule of Professional Conduct 1.5(a)."[30]  Notwithstanding Rule 1.5(a), "the Court may consider 'whether the number of hours devoted to litigation was

---

[28]    *Id.* at 245.

[29]    *Surf's Up V*, 2024 WL 1596021, at *27.

[30]    *NewWave Telecom & Techs., Inc. v. Jiang*, 2024 WL 4564150, at *4 (Del. Super. Ct. Oct. 24, 2024) (citing *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *8 (Del. Ch. July 7, 2023)).

excessive, redundant, duplicative or otherwise unnecessary,' and may decrease an award where the applicant's 'own litigation efforts have in some ways been less than ideal in terms of timeliness or prudent focus.'"[31]

Virgin insists that—since the Court does not have to do a line-by-line fee assessment—it need submit no detailed fee schedule for the Court to make a reasonableness determination. Not so.

True, the Court can conduct a reasonableness analysis without doing a complete line-by-line analysis of all the fee information. That said, the Court must make a reasonableness determination and needs more than bare charts of apparent invoices without any supporting documentation.

Virgin's heavy reliance on *Bako Pathology LP v. Bakotic*[32] for the proposition that the scant information it provides in support of its fees claim is more than sufficient due to certain contract language is puzzling and, seemingly, misplaced. In *Bako Pathology*, our Supreme Court recognized that the determination of the appropriate amount of attorney's fees is an exemplificative matter for the trial court's

---

[31] *Seidman*, 2023 WL 4503948, at *8 n. 95 (quoting *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 996 (Del. Ch. 2012)); *Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 882 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) (per curiam).

[32] 288 A.3d 252 (Del. 2022) ("*Bako Pathology IV*").

discretion.[33] There, our high court ruled that this Court incorrectly declined to award attorney's fees.[34] But it did not rule that the Court was exempt from conducting a reasonableness analysis. In turn, this Court engaged the needed analysis and made a reasonableness determination upon remand.

Indeed, after remand, this Court resolved the fees dispute only after having "carefully reviewed the parties' submissions, which included a two-inch binder of hundreds of pages of billings," and arriving at its own conclusion on the reasonableness of the fee request after inspecting the parties' submissions.[35]

Further, in *NewWave Telecom and Technologies, Inc. v. Jiang*, this Court again stated that it is not required to do a line-by-line analysis in its reasonableness determination.[36] Still, the Court determined that the requested fees were reasonable only after NewWave submitted evidence in support of its requested fees.[37] The Court observed that NewWave submitted "numerous affidavits and exhibits in support of

---

[33]  *Bako Pathology IV*, 288 A.3d at 279.

[34]  *Id*. at 281–82.

[35]  *See Bakotic v. Bako Pathology LP*, 2023 WL 12181797, at *3 (Del. Super. Ct. May 8, 2023) (memorandum opinion awarding attorney's fees and costs after remand) ("*Bako Pathology V*").

[36]  2024 WL 4564150, at *4 (citing *Seidman*, 2023 WL 4503948, at *8).

[37]  *Id.* at *5.

their requested fees."[38]  But the Court could not justify whether the requested expert fees were proper, as there was no itemized breakdown of the costs or hourly rate.[39]

So too here, the motion's exhibit shows the incurred fees but does not address reasonableness.[40]  It lacks information regarding the hours worked on any specific aspect of the case or assignment.  In turn, the Court can't analyze whether the "number of hours devoted to any assignment was excessive, redundant, duplicative, or otherwise unnecessary."[41]  Also, based on what has been submitted, the Court cannot assess the time and labor required to perform the legal services properly or if there were any time limitations imposed by the client or by the circumstances.

Virgin avers that the PSA and MSA provide that the Court shall deem the fees to be reasonable altogether.  That's not quite right.  The PSA and MSA provide:

> The Parties covenant and agree that they intend by this paragraph to compensate for attorneys' fees actually incurred by the prevailing party to the particular attorneys involved at their then normal hourly rates and that this paragraph shall constitute an instruction to the court that such rate or rates shall be deemed reasonable.[42]

---

[38]  *Id.*

[39]  *NewWave*, 2024 WL 4564150, at *6.

[40]  *See* Affidavit of Robert K. Beste (D.I. 452).

[41]  *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 996 (Del. Ch. 2012) (quoting *Mahani*, 935 A.2d at 247–48).

[42]  PSA § 5(d); MSA § 15.

The PSA and MSA instruct that the *rates* shall be deemed reasonable—*i.e.* the dollars per hour for *properly* billed hours. The PSA and MSA do not say that any fee *request* in toto shall be deemed reasonable—that is, that the volume of work or identification of work billed is necessarily proper or reasonable. Here, the Court has no information as to what are the constituent parts of the bulk hours for which Virgin seeks a fee award. In addition to the hourly rate charged, Delaware courts look at the total hours spent to determine reasonableness.[43] And, interpreting a fee-shifting provision like that here to permit cursory blanket statements of fees to support a reasonableness of volume and the Court's endorsement thereof with no proper analysis would be an unreasonable contract interpretation.[44] Under similar circumstances, other courts have ruled that the trial court still has a duty to make a reasonableness determination.[45] Especially so, when the opposing party challenges

---

[43]   *See Mahani*, 935 A.2d at 247–48 (recognizing that in addition to determining if the fee charged is reasonable under the Rule 1.5(a) factors "a court should consider whether the number of hours devoted to litigation was 'excessive, redundant, duplicative or otherwise unnecessary.'") (quoting *All Pro Maids*, 2004 WL 3029869, at *5); *compare In re Cox Communications, Inc. Shareholders Litigation*, 879 A.2d 604, 642 (Del. Ch. 2005) (ruling that the hours spent on a matter were excessive in relation to what was usefully done and involved an inefficient allocation between partners and associates) *with Bell Atlantic-Delaware, Inc. v. Hall*, 2002 WL 506868, at *1 (Del. Super. Ct. Mar. 20, 2002) (holding that time spent on the matter wasn't excessive).

[44]   "Delaware courts avoid unreasonable contract interpretations." *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 207 (Del. Super. Ct. 2020).

[45]   *See Ideal Elec. Sec. Co., v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 150 (D.C. Cir. 1997) ("Even when attorney's fees are stipulated in an agreement, the trial court may still inquire into the reasonableness of the fees claimed under an indemnity agreement if those fees are challenged. A

the proposed fee award.

With that understood, it is important that Virgin focus its supplemental filings on that for which the Court can award fees.[46]

### B. VIRGIN IS ENTITLED TO REASONABLE FEES AND COSTS ARISING OUT OF THE MSA AND PSA, BUT NOT THE APA.

Now, Virgin insists that it is entitled to an award of fees relating to the entire litigation because Delaware law takes an "all-or-nothing" approach to fee shifting in favor of the prevailing party.[47] Eventpro doesn't contend that Virgin is not the prevailing party on the MSA and PSA claims.[48] But Eventpro does contend that Virgin isn't entitled to reimbursement of fees for the complete litigation since some

---

contractual provision stipulating how the amount of the attorney's fees award shall be calculated creates a rebuttable presumption that the stipulated amount is reasonable. However, if a stipulated fee is properly challenged, the district court is obliged under District law to award only reasonable fees, with reasonableness a determination to be made by the judge."); *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 7 A.3d 1, 5–6 (Md. Ct. App. 2010) (emphasizing that "trial courts must routinely undertake an inquiry into the reasonableness of any proposed fee before accepting an award"); *Honeywell, Inc. v. Ruby Tuesday, Inc.*, 43 F.Supp.2d 1074, 1077 (D. Minn. 1999) ("The reasonableness of the stipulated fee is, however, only a presumption. If at the close of the litigation, the court determines that a 35 percent fee is unreasonably high, then the fee will be reduced to a reasonable amount.").

[46] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 & n.12 (1983), *superseded by statute on other grounds*, 42 U.S.C. § 1988(b) (noting that an applicant for fees should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims and at least identify the general subject matter of time expenditures).

[47] Atty's Fees Mot. at 3 (citing *Navient Solutions, LLC v. BPG Office Partners*, 2023 WL 3120644, at *16 (Del. Super. Ct. Apr. 27, 2023)).

[48] Feb. 27, 2025 Fees Hr'g Tr. 11 (D.I. 466).

of Virgin's trial victories stemmed from the APA, which lacks a fee-shifting clause.[49]

The MSA and PSA state that the prevailing party is entitled to an award of fees "in the event of any action or litigation between any of the Parties to enforce any provision of this Agreement."[50] The APA does not. The Court already ruled that Virgin's damages hit the APA's $2 million indemnity cap.[51]

Delaware law adheres to the "American Rule," which requires litigants themselves to defray the cost of being represented by counsel.[52] Litigants are responsible for paying their own counsel fees absent statutory authority or a contractual provision requiring it.[53] This general rule and its exceptions apply to actions at law, significantly limiting the Court's authority to order payment of attorney's fees.[54] The Court will generally enforce an agreement to shift fees.[55] And absent "qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will

---

[49] Eventpro's Opposition at 8.

[50] PSA § 5(d); MSA § 15.

[51] *Surf's Up V*, 2024 WL 1596021, at *28.

[52] *Duncan v. STTCPL, LLC*, 2020 WL 829374, at *15 (Del. Super. Ct. Feb. 19, 2020).

[53] *Id*.

[54] *Id*.

[55] *Navient Solutions*, 2023 WL 3120644, at *16.

usually be applied in an all-or-nothing manner."[56]  In an all-or-nothing case, the Court will determine which party prevailed by analyzing which party predominated in the litigation.[57]

Where fee-shifting provisions contain language requiring a prevailing party, the Court must permit recovery after determining the provision's intent.[58]  To do this, the Court must interpret the provision to execute the parties' intent.[59]

On this, *Bako Pathology* is instructive.  In *Bako Pathology*, this Court declined to award attorney's fees because it ruled that neither side actually prevailed at trial.[60] The request for fees arose from fee-shifting provisions in an Employment Agreement and Partnership Agreement.[61]  The agreements differed in that the Partnership Agreement fee-shifting condition provided for fee shifting in any litigation between the parties.[62]  In contrast, the Employment Agreement shifted fees in legal proceedings to "construe, apply, interpret, enforce, or defend any of the Company's

---

[56]  *Id*. (quoting *AFH Hldg. & Advisory, LLC v. Emmaus Life Scis., Inc.*, 2014 WL 1760935, at *2 (Del. Super. Ct. Apr. 16, 2014)).

[57]  *Navient Solutions*, 2023 WL 3120644, at *16.

[58]  *Duncan*, 2020 WL 829374, at *15.

[59]  *Id*.

[60]  *Bako Pathology IV*, 288 A.3d at 279.

[61]  *Id*. at 280.

[62]  *Id*.

rights *in this Agreement*."[63]

While acknowledging Delaware's all-or-nothing approach concerning the prevailing party, the Supreme Court found that the Superior Court correctly denied fees under the Partnership Agreement because neither party prevailed in the overall dispute.[64] But the Court concluded that the Superior Court incorrectly denied fees under the Employment Agreement since the Appellant won on all claims arising from that specific contract.[65] Therefore, the Court remanded, stating "the Superior Court erred by not awarding attorneys' fees in connection with the litigation of the claims arising under the Employment Agreements."[66]

As already discussed, upon remand, this Court explained the difficulty in trying to allocate costs by agreement in a contentious litigation spanning several years.[67] Still in the end, the Court reviewed the submitted evidence to determine the proper fee award.[68]

The Supreme Court's decision and this Court's remand ruling both recognized

---

[63] *Id*. (emphasis in original).

[64] *Id*. at 282.

[65] *Id*.

[66] *Id*.

[67] *Bako Pathology V*, 2023 WL 12181797, at *3.

[68] *Id*.

that the fee-shifting provision only applied to the Employment Agreement litigation. That was the only agreement with a fee-shifting provision for claims arising under that contract, and there was a prevailing party for that portion of the litigation. A fee-shifting provision must cover the specific successful claim to require a prevailing-party analysis. There, a fee-shifting provision did not cover the entirety of the litigation, so the Court did not award fees for the whole litigation.

*Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC*,[69] on which Virgin leans hard in its briefs, is differentiable. There, the claims were all based on the same Lease Agreement with a fee-shifting provision.[70] Since the entire litigation arose under a single contract with one fee-shifting provision, all litigation costs were covered by the provision and awarded. Not so here. Only the MSA and PSA have fee-shifting provisions, and some claims arose under the APA.

Similarly, in *Duncan v. STTCPL, LLC*, this Court interpreted the subject contracts fee-shifting language to require application of the all-or-nothing rule.[71]

---

[69] 2023 WL 3120644 (Del. Super. Ct. Apr. 27, 2023).

[70] *See Navient Soutions*, 2023 WL 3120644, at *16–17 ("There were two chief issues in this action: (1) Navient's claim for breach of the Lease Agreement with respect to the cooling tower reimbursement; and (2) BPG's counterclaim for breach of the Lease Agreement with respect to the transformer, heat pumps, rooftop air units, and elevators.").

[71] *Duncan*, 2020 WL 829374, at *15–16 (Del. Super. Ct. Feb. 19, 2020).

There, the applicable fee-shifting provision didn't contain a claim-by-claim limitation.[72] And that provision was almost identical to the provisions in the PSA and MSA—not a universal shifting provision like the Partnership Agreement in *Bako Pathology*.[73] As well, *Duncan* dealt with one contract. The Court then analyzed which party prevailed "with regard to the litigation focused on the 2009 Agreement."[74] The Court did not include a negligence claim in its prevailing party analysis since a fee-shifting provision did not cover that claim.[75] While applying the all-or-nothing rule, the Court analyzed only the portion of the litigation related to the contract with a fee-shifting provision. In the end, the Court did not award fees because there was no prevailing party regarding the 2009 Agreement dispute.[76]

Virgin's all-or-nothing interpretation misses the mark. The all-or-nothing rule doesn't mean that, if there is a fee-shifting provision for the prevailing party in one

---

[72]  *Id*.

[73]  *Id*. ("The relevant provision in the 2009 Agreement provides that: the parties agree that the reasonable and actual out-of-pocket costs, fees and expenses incurred by either party in connection with the successful enforcement of this agreement, including all reasonable attorneys' fees, are recoverable.").

[74]  *Id*. at *16.

[75]  *See id*. at *10–11, 16 (identifying a negligence claim in the summary judgment analysis, but not in the prevailing party analysis and specifically limiting the prevailing party analysis to the 2009 Agreement).

[76]  *Id*. at *16.

(or even two) of the agreements sued upon, the Court must shift all fees for the prevailing party for the entire litigation, regardless of what claims are covered. Put another way, a fee-shifting condition only shifts fees arising from claims covered by the provision. If the claims are covered and the provision includes prevailing party language, then the Court will apply the all-or-nothing approach *to the covered claims*. All-or-nothing means there is a prevailing party—or not—concerning the covered claims.

No doubt, Virgin gets fees arising from the PSA and MSA claims it prevailed on. But Virgin doesn't get the full requested amount of $3,513,698.91—which Virgin admits reflects the fees relating to the overall litigation.

Only the PSA and MSA have fee-shifting clauses, which shift fees spent to enforce those specific agreements. They are not universal fee-shifting provisions like the Partnership Agreement in *Bako Pathology*. Following the American Rule, there is nothing that shifts the fees for the claims relating to the APA. And here too, the Court can't conduct any meaningful review of which fees are tied to which claim based on Virgin's fees submissions thus far.

## V. CONCLUSION

For the foregoing reasons, Virgin Fest, LLC's Motion for Attorney's Fees and Expenses is **GRANTED, in part,** and **DENIED, in part.** Virgin is only entitled to

fees and costs arising from the PSA and MSA. Virgin must submit evidence of the attorneys' names, positions at their firms, billed hours, billed hourly rate, and a description of the services provided by each firm so the Court can evaluate the fee award in the manner described.

**IT IS SO ORDERED.**
*/s/ Paul R. Wallace*

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve